PACE MEMBERSHIP WAREHOUSE, DIVISION OF K–MART CORPORATION; and Industrial Claim Appeals Office, Petitioners,

v.

Barbara AXELSON, Respondent,

and

Department of Labor and Employment, Division of Workers' Compensation; and Director, Division of Workers' Compensation, Intervenors.

No. 96SC229.

Supreme Court of Colorado,
En Banc.

May 19, 1997.

Anderson, Campbell and Laugesen, P.C., John V. Fitzsimons, Frank M. Cavanaugh, Denver, for Petitioner Pace Membership Warehouse, Division of K–Mart Corporation.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Paul Farley, Deputy Attorney General, David M. Kaye, First Assistant Attorney General, John D. Baird, Assistant Attorney General, State Services Section, Denver, for Petitioner Industrial Claim Appeals Office; and for Intervenor Department of Labor and Employment, Division of Workers' Compensation; and for Intervenor Director, Division of Workers' Compensation.

Alexander & Ricci, William A. Alexander, Jr., Joseph M. Ricci, Colorado Springs, for Respondent Colorado Compensation Insurance Authority.

Michael J. Steiner, Curt Kriksciun, Denver, for Amicus Curiae Colorado Compensation Insurance Authority.

Chief Justice VOLLACK, delivered the Opinion of the Court.

We granted certiorari to review the court of appeals decision in *Axelson v. Pace Membership Warehouse,* 923 P.2d 322 (Colo.App. 1996), in which the court of appeals determined that section 8–42–103(1)(f), 3B C.R.S. (1995 Supp.), violates the equal protection requirements of the United States and Colorado Constitutions. Because we hold that section 8–42–103(1)(f) is rationally related to a legitimate state interest, we conclude that this statutory provision does not violate the constitutional requirements of equal protection. We therefore reverse the court of appeals and remand to reinstate the final order of the Industrial Claim Appeals Office (ICAO).

I.

The parties have stipulated to the facts in this case. On June 26, 1990, Barbara Axelson (Axelson) sustained an industrial injury while working for Pace Membership Warehouse (Pace). Axelson continued to work for

Pace through July 12, 1990, at which time she was separated from her employment. Axelson contended that she was separated from her employment because Pace did not offer her re-employment within her work restrictions, while Pace argued that Axelson voluntarily left her employment. Pace thus refused to pay Axelson's claim for temporary total disability (TTD) benefits.

. Axelson filed an administrative appeal, and on March 24, 1992, the administrative law judge (ALJ) ordered Pace to pay Axelson TTD benefits backdated from July 13, 1990. However, during the period in which Axelson's eligibility for TTD benefits was litigated, she applied for and received unemployment insurance (UI) benefits for forty weeks in the total amount of $8,109.71. Therefore, pursuant to section 8–42–103(1)(f), the ALJ ordered that Axelson's TTD benefits be offset by the amount of UI benefits she had received. Pace complied with the ALJ's order, reducing the TTD benefits it paid to Axelson by the amount of her UI benefits.

On February 22, 1994, the ALJ determined that Axelson had reached maximum medical improvement (MMI) on December 15, 1992 and that she was no longer entitled to TTD benefits after the MMI date. Axelson subsequently applied for additional UI benefits, but was awarded only twelve weeks of benefits because she had previously exhausted forty weeks of UI benefits. Axelson then requested an administrative hearing, asserting that Pace inappropriately reduced her TTD benefits by the amount of UI benefits she had received. On June 29, 1994, the ALJ determined that Axelson was not entitled to restoration of the amount Pace had claimed as an offset. On March 17, 1995, the ICAO affirmed, concluding that, pursuant to section 8–42–103(1)(f), TTD benefits must be offset by UI benefits.

The court of appeals set aside the ICAO's order, holding that as applied, section 8–42–103(1)(f) violates the equal protection requirements of the United States and Colorado Constitutions. We granted certiorari to

review the court of appeals decision and now reverse.

## II.

### A.

The Fourteenth Amendment to the United States Constitution provides that "[n]o state ... shall deny to any person within its jurisdiction the equal protection of the laws." The right to equal protection also finds support in the Due Process Clause of the Colorado Constitution. Colo. Const. art. II, § 25. When a statute is subject to an equal protection challenge, the level of judicial scrutiny varies with the type of classification utilized and the nature of the right affected. *See Industrial Claim Appeals Office v. Romero*, 912 P.2d 62, 66 (Colo.1996). Where a legislative classification does not involve a suspect class or an abridgement of a fundamental right triggering strict scrutiny, or where the classification is not a special one triggering an intermediate standard of review, an equal protection challenge must be analyzed under the rational basis standard of review. *See id.* In the current case, section 8–42–103(1)(f) does not affect a suspect or a special class, and the receipt of workers' compensation benefits is not a fundamental right. *See Romero*, 912 P.2d at 66. We therefore review this statutory provision under the rational basis standard.[1]

Under the rational basis standard of review, a statutory classification is presumed constitutional and does not violate equal protection unless it is proven beyond a reasonable doubt that the classification does not bear a rational relationship to a legitimate legislative purpose. *See Duran v. Industrial Claim Appeals Office*, 883 P.2d 477, 482 (Colo.1994). In order to establish that a classification violates the equal protection provisions of the federal and state constitutions, the classification must arbitrarily single out a group of persons for disparate treatment and not single out for such treatment other persons who are similarly situated. *See Romero*, 912 P.2d at 66.

1. Although Axelson contends that the strict scrutiny standard of review should be applied in this case, this contention is not supported by any authority. We therefore reject this argument without discussion.

■ Moreover, pursuant to the rational basis standard, a statute creating a classification is not deemed unconstitutional simply because distinctions created by the statute are not made with mathematical nicety. *See Dawson ex rel. McKelvey v. Public Employees' Retirement Ass'n,* 664 P.2d 702, 708 (Colo.1983). Rather, the problems of government being practical ones, equal protection will tolerate "a rough accommodation of variant interests." *Id.* A statute can only be stricken under the rational basis standard if there exists no reasonably conceivable set of facts to establish a rational relationship between the statute and a legitimate governmental purpose. *See Colorado Soc'y of Community and Institutional Psychologists, Inc. v. Lamm,* 741 P.2d 707, 711 (Colo.1987). Simply because a statutory classification creates a harsh result in one instance does not mean that the statute fails to meet constitutionality requirements under the rational basis standard. *See Movitz v. Division of Employment and Training,* 820 P.2d 1153, 1155 (Colo.App.1991).

■ In *Bellendir v. Kezer,* 648 P.2d 645 (Colo.1982), the claimant argued that the failure of the Workers' Compensation Act to provide for increases in past compensation awards to keep pace with inflation violated equal protection. In rejecting this argument, we stated:

> Obviously, the statutory formula is arbitrary in the sense that the General Assembly might have chosen some other method of computing disability benefits. Our inquiry is limited, however, to whether the scheme as presently constituted furthers a legitimate state purpose in a rational manner.
>
> . . . .

> ... [W]e do not mean to indicate that the present statute necessarily best fulfills the social and economic objectives it was designed to achieve or that a more just system could not be formulated.... However, it is not the function of this Court to rewrite legislation; the power to change the present scheme rests with the General Assembly.

*Id.* at 647; *see also Boehm v. Industrial Comm'n,* 738 P.2d 804, 806 (Colo.App.1987) (stating that "[i]f the distinction between the two classifications has some rational basis, the statute is not rendered invalid merely because it may, in practice, result in some inequality").[2]

### B.

Section 8–42–103(1)(f), 3B C.R.S. (1995 Supp.) ("the offset provision"), provides for the offset of TTD benefits as follows:

> In cases where it is determined that unemployment insurance benefits are payable to an employee, *compensation for temporary disability shall be reduced, but not below zero, by the amount of unemployment insurance benefits received,* unless the unemployment insurance amount has already been reduced by the temporary disability benefit amount and except that temporary total disability shall not be reduced by unemployment insurance benefits received pursuant to section 8–73–112.

(Emphasis added.) The offset provision requires TTD benefits to be offset, or reduced, by the amount of UI benefits a claimant receives when the two benefits are awarded for the same period of time. The offset provision expressly prohibits offset in cases where UI benefits are paid pursuant to section 8–73–112, 3B C.R.S. (1995 Supp.).

**2.** In the present case, the court of appeals held that section 8–42–103(1)(f), "as applied, violates the equal protection requirements" of the federal and state constitutions. *Axelson,* 923 P.2d at 323. However, the term "as applied" is misused in this case because Axelson's challenge to section 8–42–103(1)(f) is based on the contention that the statute is unconstitutional "on its face." A statute is unconstitutional "on its face" if by its own terms it classifies persons for different treatment. In contrast, a statute is unconstitutional "as applied" if the governmental officials who

administer the law are applying it with different degrees of severity to different groups of persons who are described by some suspect trait. *See Western Metal Lath v. Acoustical and Constr. Supply, Inc.,* 851 P.2d 875, 880 n. 7 (Colo.1993). In the present case, Axelson has never contended that the officials administering TTD and UI benefits are applying section 8–42–103(1)(f) with different degrees of severity to different groups of persons. It is therefore inappropriate to analyze the constitutionality of section 8–42–103(1)(f) using an "as applied" approach.

Section 8–73–112 provides for the receipt of UI benefits after the receipt of TTD benefits as follows:

> [A] person who is separated from employment due to an accident or injury resulting in a temporary total disability for which he has been compensated under section 8–42–105, if otherwise eligible, shall be entitled to receive, *after the termination of the continuous period of disability,* benefits under this article which were available and in effect at the time of separation from employment.

(Emphasis added.) Section 8–73–112 provides that a claimant may be entitled to UI benefits pursuant to its provisions only after the claimant's TTD benefits have terminated. This is an exception to the general rule that UI benefits must be paid within one year after separation from employment. *See* § 8–70–111, 3B C.R.S. (1995 Supp.).

■ In analyzing the offset provision and its reference to section 8–73–112, it is helpful to review the statutory provisions for TTD benefits as they relate to the provisions for UI benefits. TTD benefits are designed to compensate the injured employee for wage loss while the employee is recovering from a work-related injury. *See Eastman Kodak Co. v. Industrial Comm'n,* 725 P.2d 107, 111 (Colo.App.1986), *overruled on other grounds in Allee v. Contractors, Inc.,* 783 P.2d 273 (Colo.1989). By statutory operation, TTD benefits terminate when the injured worker: (1) reaches MMI; (2) returns to regular or modified employment; (3) is provided a written release from an attending physician to return to regular employment; or (4) is provided a written release from an attending physician to return to modified employment and fails to begin such employment after receiving a modified employment offer. *See* § 8–42–105(3)(a)–(d), 3B C.R.S. (1995 Supp.).

Unlike TTD benefits which compensate for wage loss due to an injury and originate under the Workers' Compensation Act, UI benefits are designed to compensate for wage loss after an employee has become unemployed through no fault of his or her own and originate under the Employment Security Act, §§ 8–70–101 to 8–82–105, 3B C.R.S. (1986 & 1995 Supp.). *See Harding v. Indus-*

*trial Comm'n,* 183 Colo. 52, 60, 515 P.2d 95, 99 (1973). Here, the parties agree that Axelson was entitled to a total of fifty-two weeks of UI benefits for her separation from employment with Pace.

### C.

■ As a preliminary matter, we find that the persons affected by the offset provision's classifications are similarly situated. The offset provision creates two classes of persons: those whose TTD benefits are subject to offset by UI benefits because their TTD and UI benefits are awarded for the same period of time, and those whose TTD benefits are not subject to offset because their UI benefits are awarded after termination of their TTD benefits. These two classes of persons are similarly situated because they each are eligible to receive both TTD benefits and UI benefits for the same separation from employment, but they are treated differently because the former is subject to offset of TTD benefits by UI benefits while the latter is not subject to such offset.

Having determined that the classifications created by the offset statute affect persons who are similarly situated, we now turn to the question of whether the classifications are based on a legitimate state interest. The parties before us do not dispute that the purpose of the offset requirement is to prevent double recovery of wage loss benefits. For purposes of equal protection challenges, we have recognized that the prevention of double recovery is a legitimate governmental interest. As we stated in *L.E.L. Construction v. Goode,* 867 P.2d 875 (Colo.1994) " '[o]nce it is recognized that work[ers'] compensation is one unit in an overall system of wage-loss protection, ... the conclusion follows that duplication of benefits from different parts of the system should not ordinarily be allowed.' " *L.E.L. Constr.,* 867 P.2d at 879 (quoting 4 Arthur Larson, *The Law of Workmen's Compensation* § 97.00 to 97.10 (1993)); *see also Rains v. Kolberg Mfg. Corp.,* 897 P.2d 845, 847 (Colo.App.1994); *Sampson v. Weld County Sch. Dist.,* 786 P.2d

488, 490 (Colo.App.1989).[3] Because the purpose of the offset provision is to prevent double recovery, the classifications created by the provision are based on a legitimate state interest.

Because the classifications are based on a legitimate governmental interest, we must now determine whether the classifications are rationally related to that interest. Pursuant to the general requirements of the offset provision, TTD benefits are offset by UI benefits if an injured worker receives UI benefits during the same time period for which TTD benefits are later awarded. However, pursuant to the offset provision's exception for workers who receive UI benefits under section 8–73–112, TTD benefits are not offset by UI benefits if the injured worker receives UI benefits after the termination of TTD benefits. This scheme is rationally related to the legitimate government interest in preventing double recovery because the offset requirement only applies to persons who receive both TTD and UI benefits for the same period of time.[4]

In the current case, Axelson received UI benefits during the same period of time for which she was later awarded TTD benefits. Axelson thus received overlapping benefits and, in order to prevent double recovery, was subject to the offset requirement. Although the legislature could have chosen another method to prevent the payment of duplicative benefits,[5] it was not required to choose a method which resulted in mathematical nicety so long as it chose a method rationally related to a legitimate governmental interest. To the extent that the present claim involves some inequities, such inequities do not lead to an invalidation of the offset provision under the rational basis standard because there exists a reasonably conceivable set of facts to establish a rational relationship between the statute and a legitimate governmental purpose.[6]

## III.

For the foregoing reasons, we hold that section 8–42–103(1)(f) is rationally related to the legitimate state interest of preventing double recovery and therefore does not violate the equal protection guarantees of the United States and Colorado Constitutions. We reverse the court of appeals and remand to reinstate the final order of the ICAO.

HOBBS, J., concurs in part and dissents in part, and SCOTT and KOURLIS, JJ., join in the concurrence and dissent.

Justice HOBBS concurring in part and dissenting in part:

I concur with the majority that section 8–42–103(1)(f), 3B C.R.S. (1996 Supp.), is rationally related to the legitimate state interest of preventing double recovery and therefore does not violate the equal protection

---

**3.** The court of appeals in the present case stated that "no double recovery occurs when the offset provision is applied to injured workers like [Axelson] who must rely on unemployment insurance benefits while TTD benefits are being litigated." However, this statement is incorrect because if Axelson is allowed both the UI benefits paid during the time of disability and the full TTD award, the result is a double recovery of benefits for the same time period.

**4.** TTD benefits and UI benefits serve the same purpose: to compensate workers for wage loss due to circumstances beyond their control. Thus, the current case is distinguishable from *Romero*, 912 P.2d 62, in which we held that "[i]f prevention of duplicate benefits is the governmental purpose for the classification ... then the statute is not rationally related to its purpose because social security retirement benefits do not serve the same purpose as workers' compensation benefits." *Id.* at 67.

**5.** The legislature did not enact a statutory provision to accommodate situations such as the current one in which the claimant receives UI benefits while waiting for a determination of her eligibility for TTD benefits. Because such a statutory provision is not included in the Workers' Compensation Act or in the Unemployment Security Act, we are constrained to interpret and apply the statutes as written and to reach the result herein.

**6.** The fact that a claimant may have adequate financial resources to wait during TTD litigation and thereby collect full UI benefits after TTD benefits cease does not make the statute unconstitutional. The statutory offset provision is not focused on the financial capacity of the claimant, but on the payment of UI and TTD benefits to the same individual for the same period of wage loss. As stated above, this focus is rationally related to the legitimate governmental interest in preventing double recovery.

guarantees of the United States and Colorado Constitutions, but I reach this result by a different analysis. The statutory provisions precluding double recovery do not prevent a full award of temporary total disability (TTD) and unemployment insurance (UI) benefits. Instead, they provide for a coordination of benefits to avoid payment of both forms of compensation for the same week. In Axelson's case, the TTD award should have been applied as a credit against the UI benefits which were paid to Axelson while she was pursuing her TTD claim.

Accordingly, I dissent from that part of the majority opinion which denies to Axelson her TTD benefit, which inured to the unjust enrichment of her employer under the circumstances of this case and should have been placed into the UI Fund to extend Axelson's UI benefit for another forty weeks. I would remand this case to the court of appeals with directions: (1) that the ICAO be ordered to require the self-insured employer to pay into the UI Fund the amount of the TTD benefit, $8,109.71, which the employer retained; and (2) that Axelson be allowed to reapply for the appropriate UI benefit to which she is entitled.

## I.

The court of appeals determined that equal protection of the law was not afforded to Axelson because she was denied benefits which others eligible for both TTD and UI are awarded. The court of appeals set aside the decision of the Industrial Claims Appeals Office (ICAO) and remanded for entry of an order by the administrative law judge (ALJ) without application of the offset provision in section 8–42–103(1)(f), which it found to be unconstitutional.

The court of appeals decision unnecessarily determined a statute to be unconstitutional. The majority correctly determines that section 8–42–103(1)(f) is constitutional. The majority reaches its result, however, by giving effect unnecessarily to the existence of two classifications of workers' compensation claimants, as did the court of appeals: (1) those who receive TTD benefits and then apply for and receive UI benefits upon the expiration of their TTD benefits; and (2)

those who apply for and receive UI benefits and then are awarded TTD benefits later. In reference to the offset provision of section 8–42–103(1)(f), the majority states that:

> The offset provision creates two classes of persons: those whose TTD benefits are subject to offset by UI benefits because their TTD and UI benefits are awarded for the same period of time, and those whose TTD benefits are not subject to offset because their UI benefits are awarded after termination of their TTD benefits.

Maj. op. at 508. The majority then determines that the two classes are similarly situated but, unlike the court of appeals, justifies their disparate treatment on the rational basis of double recovery denial, a legitimate governmental interest. Maj. op. at 508.

Pursuant to section 8–44–101, 3B C.R.S. (1996 Supp.), each employer subject to the Workers' Compensation Act shall secure compensation insurance in one of three ways:

1. By insuring through the Colorado Compensation Insurance Authority Fund (CCIA);

2. By insuring through a stock or mutual corporation authorized to be a workers' compensation insurer; or

3. By becoming a self insurer, by procuring a self-insurance permit from the executive director.

In the present case, the employer who contested the TTD award was self insured. The majority allows the employer to retain a windfall of $8,109.71 to avoid what it characterizes inaccurately as an employee double recovery. The majority concedes that a person who receives a forty-week TTD benefit without contest by an employer may then receive a succeeding fifty-two week UI benefit, providing the employee demonstrates eligibility under the otherwise applicable requirements. However, the majority holds here that a TTD award may be withheld and not credited to the benefit of an employee, because the employee drew UI benefits while in the process of vindicating her TTD claim. Such a result is contrary to applicable statutes which provide that an employee in Axelson's circumstance shall be returned to the position she would have enjoyed if the TTD

claim had been paid at the time of her initial eligibility.

## II.

## A.

### This Employee Was Denied The Benefit of Her TTD Award

This case should turn on statutory construction, not constitutional analysis. The petitioner requested that we grant certiorari on three issues:

(1) [w]hether the workers' compensation offset provision in § 8–42–103(1)(f), C.R.S., violates equal protection guarantees as applied in this instance;

(2) [w]hether the workers' compensation offset provision contained in § 8–42–103(1)(f), C.R.S., as applied in this instance, creates a "classification" for equal protection purposes; and if so, is it rationally related to a legitimate governmental purpose; and

(3) *[w]hether a workers' compensation administrative law judge can constructively convert previously received unemployment benefits into temporary total disability benefits.*

(Emphasis added.) Without denying the petition, we reframed the issues as a singular question involving equal protection, which the majority proceeds to address. The petitioner's third issue was subsumed into the reframed constitutional question.

We should avoid a constitutional analysis in favor of a statutory resolution, if possible. *See Adams County Sch. Dist. v. Heimer,* 919 P.2d 786, 790 (Colo.1996). Contrary to the majority's analysis, the applicable statutes provide for a coordination of benefits which allow full TTD and UI benefits to all claimants eligible to receive them, including those in Axelson's circumstances.

This state's Workers' Compensation Act provides that its terms are to be construed "to assure the quick and efficient delivery of disability and medical benefits to injured workers at a reasonable cost to employers, without the necessity of any litigation." § 8–40–102(1), 3B C.R.S. (1996 Supp.).

Colorado's Employment Security Act directs that "the division at all times be guided by the principle that unemployment insurance is for the benefit of persons unemployed through no fault of their own" and each eligible individual "shall be entitled to receive a full award of benefits." § 8–73–108(1)(a), (b), 3B C.R.S. (1986).

Together, the TTD and UI statutes should be construed to forward their remedial and beneficent purposes, *see* § 8–40–102, 3B C.R.S. (1996 Supp.); § 8–70–102, 3B C.R.S. (1986), and ambiguities should be resolved in favor of the intended beneficiaries, *see Mountain City Meat Co. v. Oqueda,* 919 P.2d 246, 252 (Colo.1996).

Under the UI statute, a maximum benefit amount of fifty-two weeks is allowed to eligible individuals. *See* § 8–73–102(1), (2), 3B C.R.S. (1986). Because of the employer contest to her meritorious TTD claim and her lack of financial resources to sustain her during that contest, Axelson was required to resort first to her UI benefit. The majority is correct that TTD and UI provisions prevent drawing the full amount of both benefits in the *same* week. As the majority correctly points out, section 8–42–103(1)(f) of the Workers' Compensation Act, provides that TTD compensation "shall be reduced, but not below zero, by the amount of unemployment insurance benefits received."

But the majority fails to recognize and give effect to the parallel provision of the Employment Act, which provides for credit of the TTD benefit to a corresponding extension of UI benefit:

Individuals who receive compensation for temporary disability under the workers' compensation law of any state or under a similar law of the United States *shall be entitled to receive benefits for a corresponding week, if otherwise eligible, reduced by the amount of the temporary disability compensation unless the temporary disability amount has already been reduced by the unemployment insurance benefit amount.*

§ 8–73–110(5) (emphasis added).

In other words, full TTD benefits and UI benefits cannot both be paid for the same

time period, but when TTD benefits are reduced against a UI benefit that has been paid, the TTD award is to be offset against the UI benefit so that a "corresponding" week of UI benefit may be provided on a one-for-one basis. The above provision of the UI statute effectuates this result by stating that a person otherwise eligible for UI benefits "shall be entitled to receive [UI] benefits for a corresponding week, if otherwise eligible" if "the temporary disability amount has already been reduced by the unemployment insurance benefit amount." *Id.* "Corresponding" has a broad connotation of equivalency, which the majority ignores in its effort to avoid an illusory "double recovery." The words "corresponding week" have the connotation of "substitute week" in this statutory context.

Thus, the statutory offset provisions contemplate a balancing of funds. TTD and UI jurisdiction resides in the Division of Labor and Employment and the ICAO which has authority to make and implement decisions regarding the award of both types of benefit. *See* § 8–1–102(2), 3B C.R.S. (1996 Supp.). Here, as a result of her successful claim, Axelson was awarded an $8,109.71 TTD benefit retroactive to the forty-week period for which she had drawn UI benefits. As a result, an offset was required, and so "the ALJ ordered that Axelson's TTD benefits be offset by the amount of UI benefits she had received." Maj. op. at 506. But, instead of ordering the TTD award to be credited against the UI payments that had been made previously, and thereby extending Axelson's UI eligibility for a "corresponding" forty-week period, the ALJ and the ICAO allowed the self-insured employer to retain Axelson's TTD award, resulting in a windfall to the employer.

In sum, Axelson's TTD benefit was deducted but not properly credited to accomplish the appropriate balancing of accounts to achieve the remedial purposes of both the Workers' Compensation and Unemployment statutes. Such a result should be disapproved because employers are encouraged thereby to protest legitimate TTD claims. If they do not succeed in claim denial, they can still succeed in retaining the amount of the TTD award when they are self insured, or, when they are not self insured, obtain the benefit of a claim not being paid against their CCIA or third-party insurance account.

The majority concedes that the result it reaches creates "inequities" but that these are created by statute in order to avoid double recovery. Maj. op. at 509. But there is no double recovery in the same week when the TTD award is credited as a part of the offset procedure with regard to the previously paid UI benefit.

Here, the ALJ's and the ICAO's failure to order payment of the TTD award to the UI fund deprived Axelson of the full TTD and UI benefits for which she was eligible when she separated from her employment. When she applied for an extension of the UI period, she was told she had only twelve weeks remaining. Technically, this was correct because her TTD award had not been deposited into the UI fund to offset the prior forty weeks of UI payments, as provided by section 8–73–110(5).

Statutory construction is materially aided here by reference to section 8–73–112, 3B C.R.S. (1996 Supp.), to which the majority refers but does not give effect in this case. The majority recognizes that section 8–73–112 allows employees who receive TTD benefits without contest by their employer to later apply for and receive UI benefits beyond the otherwise applicable one year limit, up to the maximum statutory period of fifty-two weeks. But the majority fails to recognize that the UI benefit period is also extended beyond the one-year period for an employee who is prevented from first drawing TTD benefits because of an employer contest. Section 8–73–112 provides that:

> Any provision of the law to the contrary notwithstanding, a person who is separated from employment due to an accident or injury resulting in a temporary total disability for which he has been compensated under section 8–42–105, if otherwise eligible, *shall be entitled to receive, after the termination of the continuous period of disability, benefits under this article which were available and in effect at the time of separation from employment.* Payment of benefits for a week under this

section shall be made only if a claim therefor is filed within the four weeks immediately following the termination of the continuous period of total disability and the week for which benefits are claimed occurs within three years after the date of separation from employment. Only one benefit year may be established under the provisions of this section.

(Emphasis added.)

Thus, employees "shall be entitled to receive" benefits which are in effect at the time of their separation "from employment due to an accident or injury resulting in a temporary total disability." *Id.* At the time Axelson suffered her injury and was separated from employment, she had a right to a TTD benefit which could be followed by a UI benefit when she reached the maximum allowed TTD benefit. Axelson is correct in asserting that she has been denied, wrongly, the full benefits intended by both the TTD and the UI statutes because she has been deprived of any benefit of her TTD award.

The majority's construction of the section 8–42–103(1)(f) offset provision, is unfortunate and unnecessary. Sections 8–42–103(1)(f), 8–73–110(5), and 8–73–112 should operate in conjunction with each other to restore an employee in Axelson's circumstance to the TTD and UI benefits she would have enjoyed if the TTD claim were paid at the time she first became eligible. We should construe statutes, if possible, to avoid questions of their constitutional validity. *See Colorado Ground Water Comm'n v. Eagle Peak Farms,* 919 P.2d 212, 221 (Colo.1996). The statutory provisions applicable here can be reconciled to equalize benefits among employees who are eligible for both TTD and UI awards, thereby avoiding the creation of two classes of claimants and the resulting equal protection analysis which both the court of appeals and the majority have pursued, with differing results.

**B.**

*The Self–Insured Employer was Unjustly Enriched*

The ICAO Panel has jurisdiction over issues involving both TTD and UI benefits, *see* § 8–1–102(2), and, consequently, enjoys the authority to effectuate an employee's TTD reduction as a deposit credit to the UI Fund, § 8–47–209, 3B C.R.S. (1996 Supp.), in order to accommodate the extension of her UI benefits up to a full fifty-two weeks. Section 8–1–102(2) provides that:

> The industrial claim appeals panel has the duty and the power to conduct administrative appellate review of any order entered pursuant to articles 43 [workers' compensation] and 74 [unemployment insurance] of this title and to make a decision on said appeal.

Axelson applied for additional UI benefits when her TTD benefits were ordered to be reduced; she was told that she had used forty weeks of UI benefit and had only twelve weeks remaining. She did not contest the denial of the UI benefit extension but she did seek, in the proceedings below, to have the TTD benefit paid into the UI fund. She could not reapply for the UI benefit until a statutory balancing of funds had occurred. In her opening brief before the court of appeals, Axelson argued:

> When an injured worker draws unemployment insurance benefits in order to survive while awaiting the administrative law judge's determination that respondents wrongfully refused to pay properly due temporary total disability benefits, respondents are entitled to a credit as against back due temporary total disability benefits the amount received by claimant as unemployment insurance benefits. However, when claimant, thereafter, reaches maximum medical improvement and would be entitled to additional unemployment insurance benefits but for her prior receipt of said benefits, respondents must refund the credit previously taken.[1]

1. Before the ICAO, Axelson argued that the offset had been implemented improperly. The ICAO Final Order stated that: "Subsequently, the claimant requested a hearing and asserted that the respondents inappropriately reduced her temporary total disability benefits by claiming the unemployment insurance benefits offset. In effect, the claimant requested that the respondents reimburse the total amount of the offset

Accordingly, she has preserved her argument that the ICAO has authority to order reimbursement of her TTD award to the UI Fund so that "corresponding" weeks of UI eligibility can be extended.

The denial of the UI extension by the Division of Labor and Employment was justified when determined, but was made solely because the UI Fund had not yet been reimbursed by the TTD award. Allowing the self-insured employer to retain that award without requiring it to be deposited into the UI Fund, so that Axelson may reapply for her UI benefit, constitutes unjust enrichment under the facts of this case. The doctrine of unjust enrichment applies in a commercial setting when a benefit conferred on a party is retained and not compensated under inequitable circumstances. The amount constituting the unjust enrichment is subject to being recaptured. *See Ninth Dist. Prod. Credit Ass'n v. Ed Duggan, Inc.,* 821 P.2d 788, 795 (Colo.1991); *Cablevision of Breckenridge, Inc. v. Tannhauser Condominium Ass'n,* 649 P.2d 1093, 1096–97 (Colo.1982).

In *County Workers Compensation Pool v. Davis,* 817 P.2d 521 (Colo.1991), we recognized the applicability of the unjust enrichment doctrine in the Workers' Compensation setting. We said that:

> Several jurisdictions—a sufficient number apparently to qualify as a majority, hold that basic considerations of fairness to the employee and the prevention of unjust enrichment to the insurer militate in favor of a rule authorizing an order of apportionment.

*Id.* at 525 (citations omitted). We also said that "the legislature, in enacting the Workers' Compensation Act, intended a just and reasonable result." *Id.* at 526. The *Davis* case involved "considerations of fundamental fairness to the worker and the prevention of unjust enrichment to the insurer," *id.* at 523, in circumstances where the insurer demanded reimbursement for a workers' compensation award it had paid to an employee, following an employee tort recovery. The insurer, having benefited by the employee's successful litigation settlement, was required to pay a proportionate amount of the employee's attorney fees and court costs.

which they took against her temporary disability

Equity should prevent a windfall to the employer here. The court of appeals has authority to order the ICAO to take appropriate corrective action:

> Upon setting aside of any order, the court may recommit the controversy and remand the record in the case for further hearing or *proceedings by the* director, administrative law judge, or *panel,* or *it may order entry of a proper award upon the findings as the nature of the case shall demand.* In no event shall such order for award be for a greater amount of compensation than allowed by articles 40 to 47 of this title, or in any manner conflict with the provisions thereof.

§ 8–43–312, 3B C.R.S. (1996 Supp.) (emphasis added). In the usual circumstance, the proper action of the ICAO, when a UI benefit has been paid pending the proceeding involving the successful TTD claim, is to require the self-insured employer, CCIA, or the third-party insurer to deposit the TTD award into the UI Fund, so that the employee will not be denied a UI extension by lack of the proper balancing of accounts. I believe the proper disposition of this case involves a remand to the court of appeals to exercise its authority under section 8–43–312, to return the case to the ICAO with directions that the employer be ordered to pay the withheld TTD award in the amount of $8,109.71 into the UI Fund, so that Axelson may reapply for a determination and payment of UI benefits upon a showing of her eligibility for them at the time she was deprived of such benefit.

Accordingly, I respectfully concur that section 8–42–103(1)(f) is not unconstitutional and dissent from the majority's failure to provide Axelson with the benefit of her $8,109.71 TTD award which, under the circumstances of this case, inured to the unjust enrichment of her employer.

I am authorized to say that SCOTT and KOURLIS, JJ., join in this concurrence and dissent.

benefits."