**Leonard O. CULVER, Petitioner
and Cross–Appellee,**

**v.**

**ACE ELECTRIC; Colorado Compensation
Insurance Authority; Subsequent Injury
Fund; and the Industrial Claim Appeals
Office of the State of Colorado, Respondents,**

**and**

**Subsequent Injury Fund, Respondent
and Cross–Appellant.**

**No. 96CA1759.**

Colorado Court of Appeals,
Div. IV.

Sept. 18, 1997.

Rehearing Denied Nov. 13, 1997.

Certiorari Granted Feb. 23, 1998.

Dawes and Harriss, P.C., Gail C. Harriss, Durango, for Petitioner and Cross–Appellee.

Colorado Compensation Insurance Authority, Laurie A. Schoder, Denver, for Respondents Ace Electric and Colorado Compensation Insurance Authority.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Roxane D. Baca, Assistant Attorney General, Denver, for Respondent and Cross–Appellant Subsequent Injury Fund.

No Appearance for the Industrial Claim Appeals Office.

Opinion by Judge PIERCE.*

In this workers' compensation case, Leonard O. Culver (claimant) seeks review of a final order of the Industrial Claim Appeals Office (Panel) which granted his employer, Ace Electric; its insurer, the Colorado Compensation Insurance Authority (CCIA); and the Subsequent Injury Fund (SIF) an offset for social security retirement benefits he received. Claimant also contends that the statute authorizing the offset, § 8–42–103(1)(c)(II), C.R.S.1997, violates the equal protection guarantees of the Fourteenth Amendment and Colo. Const. art. II, § 25. In a cross-appeal, the SIF seeks review of that portion of the Panel's order to the extent that it required the SIF to pay a portion of claimant's permanent total disability (PTD) benefits. We affirm the Panel's order and rule that the statute is constitutional.

Claimant sustained an admitted industrial injury in 1992 while working for Ace Electric. Finding that claimant was permanently and totally disabled, the Administrative Law Judge (ALJ) concluded that 60% of the disability was attributable to the 1992 injury, and the remaining 40% was attributable to an industrial injury claimant sustained in 1981 while baling hay on his farm. Accordingly, the CCIA was held liable for 60% of the PTD benefits, and the SIF was held liable for 40% of the benefits.

Because claimant began receiving social security retirement benefits at age 62, which was two years prior to the 1992 injury, the CCIA and SIF requested an offset pursuant to § 8–42–103(1)(c)(II)(A), C.R.S.1997. The ALJ denied the offset on the ground that the statute did not apply to the retirement benefits in this case.

The Panel affirmed the apportionment of liability to the SIF. However, it modified the ALJ's order to permit an offset for the social security retirement benefits received.

## I. APPLICATION OF THE OFFSET STATUTE

### A.

Arguing that the purpose of the offset statute is to prevent duplication of benefits, claimant contends first that the offset should not be allowed because there is no double recovery here. Claimant notes that he was receiving both social security retirement benefits and wages before the 1992 injury, and that the retirement benefits were received independent of any industrial disability. Therefore, he argues that the offset in effect penalizes him because not only does he receive just two-thirds of his wages in the form of PTD benefits, but his PTD benefits are then reduced by one-half the amount of his retirement benefits. We disagree.

Section 8–42–103(1)(c)(II), the offset provision governing retirement benefits, provides, in pertinent part:

In cases where it is determined that periodic benefits granted by the federal old-age, survivors, and disability insurance act or employer-paid retirement benefits are payable to an individual and the individual's dependents when the individual reaches the age of sixty-five years, the aggre-

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3),

and § 24–51–1105, C.R.S.1997.

gate benefits payable for permanent total disability pursuant to this section shall be reduced, but not below zero:

(A) By an amount nearly as practical to one-half such federal benefits. . . .

This section contains no language limiting the application of the offset only to those circumstances in which both types of benefits compensate wage loss for an industrial disability. *See generally Ihnen v. Western Forge*, 936 P.2d 634 (Colo.App.1997) (rejecting claimant's contention that the offset authorized by § 8–42–103(1)(c)(I), C.R.S.1997, for social security disability benefits should not be applied because she was entitled to social security mother's benefits prior to, and independent of, the work-related injury, yet could not concurrently receive the two types of social security benefits).

■ Indeed, the statute evidences an intent that the disability portions of the Workers' Compensation Act be coordinated with the retirement provisions of the Social Security Act. *Cf. Johnson v. Industrial Commission*, 761 P.2d 1140 (Colo.1988). Thus, under the plain language of the statute, the offset may be taken for social security retirement benefits, even though the retirement benefits are not designed to compensate a claimant for an industrial injury. *See L.E.L. Construction v. Goode*, 867 P.2d 875 (Colo.1994).

■ The fact that a claimant begins to receive one type of wage-loss benefit before receiving another does not entitle him or her to more than one benefit. Since claimant has experienced only one wage loss, to prevent a duplication of benefits, he should receive only one wage-loss benefit. *See L.E.L. Construction v. Goode, supra; Hoffman v. Hoffman*, 872 P.2d 1367 (Colo.App.1994).

**B.**

Claimant next contends that the offset for social security retirement benefits is inapplicable because he did not first receive social security disability benefits. Claimant interprets the offset statute as requiring that such benefits be actually received by him before the offset for retirement benefits applies. We disagree.

Claimant's argument is premised upon that portion of § 8–42–103(1)(c)(II)(A) that limits the social security retirement offset of PTD benefits by providing that:

[T]his reduction for the periodic benefits granted by the federal old-age, survivors, and disability insurance act *shall not exceed* the reduction specified in subparagraph (I) of this paragraph (c) for the periodic disability benefits *payable* to an individual. . . .

(emphasis added) In turn, § 8–42–103(1)(c)(I), C.R.S.1997, provides that when social security disability benefits are "payable," workers' compensation benefits are reduced by 50% of those federal disability benefits. *See Ihnen v. Western Forge, supra.* Thus, claimant reasons that any offset for retirement benefits would necessarily "exceed" benefits payable for social security disability benefits because he had not received the latter benefits.

■ However, we reject claimant's argument that § 8–42–103(1)(c)(II)(A) contemplates that the retirement offset is dependent upon a finding that the claimant actually received social security disability payments. The exception in § 8–42–103(1)(c)(II)(A) is only a limitation on the amount of the offset. It is not, as claimant's argument suggests, a condition precedent to the applicability of the offset. Both §§ 8–42–103(1)(c)(I) and (II) contain separate conditions precedent to the applicability of each offset—an offset under § 8–42–103(1)(c)(I) may be taken only if social security disability benefits are "payable," and an offset under § 8–42–103(1)(c)(II) may be taken only if social security retirement benefits are "payable."

The term "payable," as used in § 8–42–103(1)(c)(I), has not been construed to mean that a claimant actually obtain social security disability benefits in order for the offset to apply. The question is whether a claimant is entitled to the benefits, not whether he or she actually applied for and received them. *Hurtado v. CF & I Steel Corp.*, 168 Colo. 37, 449 P.2d 819 (1969); *Arellano v. Director Division of Labor*, 42 Colo.App. 149, 590 P.2d 987 (1979).

In our view, the term "payable" as it is used in § 8–42–103(1)(c)(II)(A) has the same

meaning as it does in § 8–42–103(1)(c)(I). *See Henderson v. RSI, Inc.,* 824 P.2d 91 (Colo.App.1991) (statute should be read to give consistent, harmonious and sensible effect to all its parts). If the claimant is so entitled to benefits, then the amount of the retirement offset may not exceed the disability offset.

Thus, while the entitlement to social security disability benefits acts as a condition precedent to the applicability of the offset under § 8–42–103(1)(c)(I), it serves a different purpose under § 8–42–103(1)(c)(II)(A). There, the entitlement to social security disability benefits affects only the limitation on the amount of the retirement offset.

■ Here, a reasonable inference from claimant's testimony was that he was entitled to social security disability benefits, but elected not to apply because the increase in social security benefits would be small and he would, in effect, have to give it back to the CCIA. Thus, there is evidence in the record to support the conclusion that claimant's entitlement to social security disability benefits triggered the limitation on the amount of the social security retirement offset, but in no way affected the applicability of the retirement offset itself.

## II. CONSTITUTIONALITY OF THE OFFSET STATUTE

■ Claimant's final contention is that the offset in § 8–42–103(1)(c)(II)(A) violates the equal protection clause. We reject this contention.

■ In determining the constitutionality of this offset, we begin with the presumption that it is valid. The burden is on the claimant, as the challenging party, to prove the invalidity of the classification beyond a reasonable doubt. *See Naiden v. Epps,* 867 P.2d 215 (Colo.App.1993). And, because the receipt of workers' compensation benefits is not a fundamental right, the rational basis test applies. *Duran v. Industrial Claim Appeals Office,* 883 P.2d 477 (Colo.1994).

■ Under this standard, a statutory classification that singles out a group of persons for disparate treatment must be rationally based on differences that are real and not illusory, and must be reasonably related to a legitimate state interest. *Higgs v. Western Landscaping & Sprinkler Systems, Inc.,* 804 P.2d 161 (Colo.1991). If any conceivable set of facts would lead to the conclusion that a classification serves a legitimate purpose, a court must assume those facts exist. *Pace Membership Warehouse v. Axelson,* 938 P.2d 504 (Colo.1997).

Claimant lists three sets of classes of claimants who are treated differently, allegedly without a rational basis. However, in each instance, we are able to identify a rational basis which defeats the constitutional challenge.

The first set consists of that class of claimants over age 65 who have a PTD, as compared to those over 65 with a permanent partial disability (PPD). Since the offset for social security retirement benefits applies only to those claimants over age 65 with a PTD, but not those with a PPD, claimant argues that equal protection guarantees are violated.

Not all PPD's are as severe as PTD's. As stated in *Duran v. Industrial Claim Appeals Office, supra,* 883 P.2d at 483: "What greater rational reason is there for awarding different benefits for injuries than a differentiation based on the relative severity of those injuries?" This reasoning applies equally to the award of different offsets for the two types of injuries.

The next set of classes consists of claimants who receive social security retirement benefits at the time of their industrial injury as compared to those who do not. Claimant argues that because he was both working and receiving retirement benefits he had two sources of income at the time of his injury. Therefore, his perception is that he suffers a "double loss" since his disability benefits are only two-thirds of his wages, and then the disability benefits are further offset by 50% of his retirement benefit. In contrast, those claimants who do not receive retirement benefits at the time of the injury receive, according to claimant, the full disability benefit.

However, we hold that, like the disability offset in § 8–42–103(1)(c)(I), the retirement

offset in § 8–42–103(1)(c)(II) may be taken not only as to those claimants who receive social security retirement benefits, but also as to those who are entitled to such benefits. *See Hurtado v. CF & I Steel Corp., supra; Arellano v. Division of Labor, supra.* If those claimants who did not actually receive retirement benefits are entitled to the benefit, but choose not to receive them, then the offset may still be taken. Therefore, the two groups are not being dissimilarly treated.

Furthermore, even if we assume that these two classes are somehow treated differently, we find no equal protection violation. Avoiding duplicative benefits serves a legitimate governmental interest, and imposing an offset has consistently been held to be rationally related to that interest. *Pace Membership Warehouse v. Axelson, supra; Hoffman v. Hoffman, supra.*

The last set of classes of claimants who are allegedly treated differently without a rational basis are those who are injured before age 45 as compared to those who are injured after age 45. This argument hinges on § 8–42–103(1)(c)(IV), C.R.S.1997, which provides that the retirement benefit offset in § 8–42–103(1)(c)(II) shall apply only if the injury on which the award for PTD was based occurred after the claimant reached 45 years of age. Thus, claimants who are injured before age 45 do not suffer an offset of their retirement benefits at age 65. Claimant argues that this age restriction is not rationally related to the legitimate state purpose of preventing the duplication of benefits.

We recognize that in *Industrial Claim Appeals Office v. Romero,* 912 P.2d 62 (Colo. 1996), cited by claimant, the supreme court determined that a statutory provision eliminating PTD benefits for claimants at age 65 was found to deny equal protection guarantees. However, an age cap is conceptually different from an offset. The age cap at issue in *Romero* resulted in cutting off benefits to claimants with a PTD at age 65, while those claimants with a PPD continued to receive benefits. The age cap was thus found to lack a rational basis. There, the petitioners argued that the presumed rational basis for the age cap was that persons age 65 and older who have a PTD do not suffer

any wage loss because they receive retirement benefits. The court held that this presumption, even if administratively convenient, did not justify the elimination of PTD benefits to those individuals over age 65 who would not be entitled to retirement benefits.

The offset here, in contrast, applies only if the claimant with a PTD is entitled to another type of wage-loss benefit in the form of retirement benefits. Thus, *Romero* is not dispositive.

Rather, the question becomes whether there is some rational basis for applying the offset only to claimants who were older when they suffer a PTD. Our review of the legislative history of the retirement benefit offset convinces us that a rational basis does exist for differing treatment of this class of claimants.

The addition of the social security retirement benefit offset—along with the limitation of that offset to individuals who were over age 45 when they suffered an injury which culminated in a PTD—was discussed in the General Assembly in 1989. The offset was viewed as a "compromise amendment" that would accommodate the varying interests of claimants and employers.

The House committee considering the issue heard testimony that, from a claimant's perspective, a worker who suffers a PTD early in life is unable to pay into the social security system to the same extent as an older worker. As a result, the younger worker's eventual retirement benefit will be less than that of the older worker. As a witness before the committee explained, "the compromise is to offset 50% of the retirement benefits at age 65, similar to what is done under social security disability. But since workers' compensation has no cost of living increase in the law, whatsoever, you don't offset those people who become permanently and totally disabled early in life."

The age of 45 was selected because under the Social Security Act then in effect, "[Y]ou're considered a younger individual if you're under the age of 45." Hearings on H.B. 1322 before the House Committee on Agriculture, Livestock, and Natural Resources, 57th General Assembly, First Regu-

lar Session (February 8, 1989). *See* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 201.00(h) (1997) (defining the term "younger individual"); *Kirk v. Secretary of Health & Human Services,* 667 F.2d 524 (6th Cir. 1981) (line-drawing between differing ages in medical-vocational guidelines authorized by Secretary of Health and Human Services for use in disability determinations is rational legislative and administrative distinctions, since administrative distinctions need not be drawn with mathematical precision, limitations imposed by the guidelines are not wholly irrational or arbitrary and capricious, and withstand attack on equal protection grounds).

Thus, there exists a conceivable set of facts that would lead to the conclusion that the classification between claimants older and younger than 45 years of age serves a legitimate state purpose. *See Christie v. Coors Transportation Co.,* 933 P.2d 1330 (Colo. 1997)

### III. SIF LIABILITY

On cross-appeal, the SIF argues that the ALJ erred in determining that the 1981 injury resulted in an industrial disability within the meaning of § 8–46–101(1)(a), C.R.S.1997. In support, the SIF cites claimant's testimony that he operated the farm as a business, and occasionally hired workers to help bale hay. The SIF reasons that claimant failed to prove that the 1981 injury was compensable under the provisions of § 8–41–301(1)(a), C.R.S.1997. We are not persuaded.

We agree with the SIF that claimant could have purchased insurance to cover the farming operation at the time of the 1981 injury. Claimant admittedly employed workers in his farming business and, therefore, could have purchased a policy under the provisions of the predecessor statute. *See Stampados v. Colorado D & S Enterprises, Inc.,* 833 P.2d 815 (Colo.App.1992). However, the real issue is whether claimant's failure to procure such insurance disqualifies the 1981 injury from creating an industrial disability for purposes of § 8–46–101(1)(a).

 In resolving this issue, we note that the purpose of the SIF was to ameliorate the harsh effects of the full responsibility rule. Under this rule, an employer is liable for full PTD benefits if an industrial injury combines with preexisting disability so as to produce a PTD. The legislative objective in mitigating the effects of the full responsibility rule was to encourage Colorado employers to hire partially disabled workers. *Pacheco v. Roaring Fork Aggregates,* 897 P.2d 872 (Colo.App. 1995).

 It is true that, under § 8–46–101(1)(a), the claimant's PTD must be the result of an industrial injury, and not of a preexisting non-industrial condition. *City & County of Denver v. Industrial Commission,* 690 P.2d 199 (Colo.1984). However, the term "industrial disability" has not been construed to mean that a particular injury would have resulted in actual compensation had a claim for benefits been filed. For instance, in *Citadel Mall v. Industrial Claim Appeals Office,* 892 P.2d 419 (Colo.App.1994), a division of this court held that SIF liability was appropriate where the claimant sustained a compensable injury, followed by a subsequent injury while undergoing on-the-job training (OJT) as a result of mandatory vocational rehabilitation. The division reasoned that there were two industrial injuries because a second and subsequent employment relation existed between the claimant and the OJT employer. SIF liability was appropriate despite the fact that no compensation claim had been asserted or adjudicated against the OJT employer.

 In view of *Citadel Mall,* the critical issue in determining whether claimant sustained an industrial disability for purposes of § 8–46–101(1)(a) is whether the injury arose out of employment related activities which were cognizable under the provisions of the Act, not whether actual adjudication of a claim would have resulted in an award of compensation.

 Here, the SIF does not dispute that claimant's 1981 injury arose out of the farming operation, and that it could have been compensable under the Act but for claimant's failure to purchase compensation insurance. Thus, claimant's injury was cognizable under

the Act, and the resulting disability was industrial for purposes of SIF liability.

Moreover, it cannot seriously be argued that, if one of claimant's former employees had been injured, claimant's failure to procure insurance would have precluded the employee or his employer from recovery from SIF in case of a subsequent industrial injury. To the contrary, § 8–43–408(1), C.R.S.1997 would permit such an injured employee to seek workers' compensation from claimant together with a 50% increase in compensation by reason of the failure to procure insurance. Thus, the sole absence of insurance does not remove the case from the purview of the Act, and does not render the injury non-industrial for purposes of SIF liability.

■ Finally, we conclude that this result is consistent with the purposes of SIF liability. In order to effectuate the purposes of § 8–46–101(1)(a), and reap the benefit of SIF liability, an employer should not be required to conduct an exacting legal inquiry into whether a potential employee's prior injury would have been compensable under the detailed insurance provisions of the Act. In fact, such a requirement would tend to discourage employers from hiring disabled employees and would, therefore, defeat the benefit of SIF liability to the employer and society at large. *Cf. Kelly v. Mile Hi Single Ply, Inc.*, 890 P.2d 1161 (Colo.1995). For these reasons, we uphold the ALJ's order apportioning liability to the SIF.

■ Inasmuch as the SIF failed to raise before the Panel the contention that claimant was exempt from the Act pursuant to the provision now codified as § 8–40–302(3), C.R.S.1997, we decline to address it. *See Apache Corp. v. Industrial Commission*, 717 P.2d 1000 (Colo.App.1986).

The order of the Panel is affirmed.

JONES and KAPELKE, JJ., concur.