Leonard O. CULVER, Petitioner,

v.

ACE ELECTRIC; Colorado Compensation Insurance Authority; the Industrial Claim Appeals Office of the State of Colorado; and Subsequent Injury Fund, Respondents.

Raymond Stolworthy, Petitioner,

v.

John Clark, d/b/a Clark Construction; Colorado Compensation Insurance Authority; Subsequent Injury Fund; and Industrial Claim Appeals Office of the State of Colorado, Respondents.

Robert Duddy, Petitioner,

v.

ADT Security Systems, Inc.; Liberty Mutual Fire Insurance Company; the Subsequent Injury Fund; and the Industrial Claim Appeals Office, Respondents.

Nos. 97SC891, 97SC892, 97SC767.

Supreme Court of Colorado, En Banc.

Jan. 19, 1999.

Dawes and Harriss, P.C., Gail C. Harriss, Durango, Colorado, Attorney for Petitioner in Nos. 97SC891 and 97SC892.

Michael J. Steiner, Denver, Colorado, Attorney for Respondent, Ace Electric and John Clark d/b/a Clark Construction.

Curt Kriksciun, Michael J. Steiner, Denver, Colorado, Attorneys for Respondent, Colorado Compensation Insurance Authority in Nos. 97SC891 and 97SC892.

Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General, Michael E. McLachlan, Solicitor General, Garth C. Lucero, Deputy Attorney General, Hollyce H. Farrell, Assistant Attorney General, Denver, CO, Attorneys for Respondent, Subsequent Injury Fund

Wilcox & Ogden, P.C., Ralph Ogden, Denver, Colorado, Attorney for Petitioner in No. 97SC767.

Law Offices of Jonathan S. Robbins, Jeanne M. Labuda, Denver, Colorado, Attorneys for Respondents, ADT Security Systems, Inc. & Liberty Mutual Insurance Co.

Weinberger & Kanan, P.C., Thomas L. Kanan, Denver, CO, Attorney for Amicus Curiae Colorado Defense Lawyers.

Justice HOBBS delivered the Opinion of the Court.

We accepted two certiorari issues [1] and consolidated three cases to address the challenged constitutionality and proper application of the offset provision of section 8–42–103(1)(c)(II) and (IV), 3 C.R.S. (1998), of the Colorado Workers' Compensation Act (Act). This provision reduces, but not below zero, the periodic permanent total disability payments otherwise payable to an injured worker who has reached the age of sixty-five and to whom, or to whose dependents, social security or employer-paid retirement benefits

---

1. We undertook certiorari review of the following two questions:

(1) Whether section 8–42–103(1)(c), 3 C.R.S. (1997) of the Workers' Compensation Act violates the equal protection rights of claimants and individuals in the position of the claimants under both the United States and Colorado Constitutions.

(2) Whether claimant Culver's workers' compensation benefits being paid for permanent total disability may be reduced by the amount Claimant Culver is receiving in Social Security retirement benefits when he was receiving these benefits both before, and as of the date of, his work related injury under section 8–42–103(1)(c)(II)(A), 3 C.R.S. of the Workers' Compensation Act.

are also payable. The offset amount cannot exceed one-half of the workers' social security benefits. The provision does not apply to injured workers who have reached their sixty-fifth birthday and are eligible to receive temporary or partial permanent workers compensation payments, nor does it apply to permanently and totally disabled (PTD) workers who incurred their injuries prior to reaching the age of forty-five. *See* § 8–42–103(1)(c)(IV), 3 C.R.S. (1998).

Petitioners Leonard Culver, Raymond Stolworthy, and Robert Duddy (Petitioners) contend that the offset requirement violates equal protection of the laws because it does not serve a legitimate governmental purpose, lacks a rational basis, and arbitrarily discriminates between (1) PTD workers who have reached the age of sixty-five, and workers of the same age who are temporarily or partially disabled; (2) PTD workers injured on or after their forty-fifth birthday, and PTD workers who were injured prior to their forty-fifth birthday. Petitioner Culver also argues individually that Colorado's statute does not allow the reduction of disability payments to a worker who was receiving social security on or before the date of injury.

The court of appeals held the offset provision to be constitutional. *See Culver v. Ace Elec.*, 952 P.2d 1200, 1204–06 (Colo.App. 1997); *Stolworthy v. Clark*, 952 P.2d 1198, 1199–1200 (Colo.App.1997). The court of appeals also rejected Culver's statutory argument. We took Duddy's case on certiorari review, prior to decision by the court of appeals, pursuant to C.A.R. 50. We conclude that the statute is constitutional and uphold the judgments of the court of appeals in *Culver* and *Stolworthy* and the decision of the Industrial Claim Appeals Office (ICAO) in *Duddy v. ADT Security Systems, Inc.*, W.C. No. 3–996–097 (Industrial Claim Appeals Office, Feb. 19, 1997).

## I.

### Facts and Procedural History

Petitioners challenge the constitutionality of section 8–42–103(1)(c)(II) and (IV), and petitioner Culver questions the statute's application to his circumstances.

## A.

### Leonard Culver

Culver sustained an industrial injury in July 1992, while working for Ace Electric. Finding Culver to be PTD, the administrative law judge (ALJ) attributed sixty percent of the liability to the Colorado Compensation Insurance Authority (CCIA) and forty percent to the Subsequent Injury Fund (SIF) on account of a previous industrial injury. The ALJ denied the request of CCIA and SIF for an offset under section 8–42–103(1)(c)(II).

On appeal, ICAO modified the ALJ's order and offset Culver's PTD benefits against his social security retirement benefits. The court of appeals affirmed the ICAO order, holding that section 8–42–103(1)(c) does not violate the Equal Protection Clause of the United States Constitution or the Due Process Clause of the Colorado Constitution, article II, section 25.

## B.

### Raymond Stolworthy

Stolworthy sustained an injury in September of 1992 while working for Clark Construction. The parties stipulated to his PTD, with liability being apportioned fifteen percent to the SIF and eighty-five percent to the CCIA. Stolworthy became eligible for social security retirement benefits in July 1992, a few months before his industrial injury. He began receiving social security retirement benefits on December 1, 1992, and turned sixty-five on July 13, 1995. His spouse began receiving social security retirement benefits when she turned sixty-two on February 1, 1994.

On August 20, 1996, the ALJ found that respondents CCIA and SIF were entitled to an offset, due to the social security retirement benefits payable to Stolworthy and his wife. The ICAO affirmed the ALJ's order. The court of appeals affirmed the ALJ and ICAO decisions and upheld the constitutionality of section 8–42–103(1)(c), in reliance on *Culver,* which it announced on the same day as *Stolworthy.*

### C.

#### Robert Duddy

At an administrative hearing on February 12, 1997, the ALJ found that Duddy was PTD as a result of two on-the-job injuries suffered while working for ADT Security Systems, Inc. Duddy reached maximum medical improvement from the second of these two injuries on December 16, 1993 and has been receiving PTD benefits since then. Liberty Mutual Insurance Company, the compensation carrier at the time of the second injury, pays for eighty percent of the disability benefits; SIF pays for the remaining twenty percent. CCIA and SIF admitted to this apportionment of liability, and Duddy did not challenge it.

As a result of his on-the-job injuries, Duddy began receiving social security disability benefits in November of 1992. At the time of the administrative hearing and his appeal to ICAO, Duddy had not begun to receive retirement benefits. Nevertheless, he asserted a constitutional challenge to section 8–42–103(1)(c)(II), anticipating that he would face invocation of the retirement benefits offset in the future. For want of jurisdiction by an administrative agency to declare a statute unconstitutional, the ALJ denied Duddy's equal protection challenge to the statute. The ICAO affirmed the ALJ decision.

Duddy petitioned the court of appeals solely on the issue of the statute's alleged unconstitutionality. While Duddy's appeal was pending, the court of appeals issued its decisions in *Culver* and *Stolworthy*. We exercised our transfer authority under C.A.R. 50, granting Duddy's petition for writ of certiorari prior to judgment in the court of appeals.

### D.

#### Consolidation of Cases

We have consolidated Culver's, Stolworthy's, and Duddy's cases for briefing, oral argument, and decision. The primary point of contention is the constitutionality of the social security and employer-paid retirement benefits offset provision. Section 8–42–103(1)(c)(II) and (IV) of Colorado's Workers' Compensation Act reduces the amount of PTD compensation payable to injured workers who have reached their sixty-fifth birthday, depending on the availability of federal social security retirement or employer-paid retirement benefits also payable to them or their dependents. This provision recites, in pertinent part that:

(II) In cases where it is determined that periodic benefits granted by the federal old-age, survivors, and disability insurance act or employer-paid retirement benefits are payable to an individual and the individual's dependents when the individual reaches the age of sixty-five years, *the aggregate benefits payable for permanent total disability pursuant to this section shall be reduced, but not below zero:*

(A) *By an amount equal as nearly as practical to one-half such federal benefits;* except that this reduction for the periodic benefits granted by the federal old-age, survivors, and disability insurance act shall not exceed the reduction specified in subparagraph (I) of this paragraph (c) for the periodic disability benefits payable to an individual;

(B) *By an amount determined as a percentage of the employer-paid retirement benefits,* said percentage to be determined by a weighted average of the employer's contributions during the period of covered employment divided by the total contributions during the period of covered employment; except that in permanent total disability cases all contributions made by the employer pursuant to a collective bargaining agreement with the employee's representative shall be considered to have been made by the employee.

. . . .

(IV) the provisions of subparagraphs (II) and (III) of this paragraph (c) shall apply only if the injury on which the award for permanent total disability was based occurred after the claimant reached forty-five years of age.

§ 8–42–103(1)(c)(II),(IV), 3 C.R.S. (1998) (emphasis added).

Relying on *Industrial Claim Appeals Office v. Romero*, 912 P.2d 62 (Colo.1996), Peti-

tioners contend that this provision violates equal protection of the laws because it does not serve a legitimate governmental purpose, lacks a rational basis, and arbitrarily discriminates between (1) PTD workers who have reached the age of sixty-five, and temporarily or partially disabled workers of the same age; and (2) PTD workers injured on or after their forty-fifth birthday, and PTD workers injured prior to their forty-fifth birthday. Culver also argues individually that the statute does not permit a PTD reduction when the worker's injury occurs after the date he or she began receiving social security retirement benefits.

## II.

### Constitutional Challenge

■ We hold that section 8–42–103(1)(c)(II) and (IV) serves a legitimate governmental purpose, has a rational basis for the classifications it establishes between injured workers, and, consequently, is constitutional. Taking into account benefits to injured workers and costs to employers, the General Assembly can legitimately require the coordination of social security and employer-paid retirement payments to reduce the periodic PTD payments otherwise payable during the same period to an injured worker who has reached his or her sixty-fifth birthday. These benefits share, at least in part, a similar employee wage loss protection purpose; hence, the General Assembly's offset provision serves the legitimate governmental purpose of preventing a duplication of benefits.

The statute's classification of workers between PTD claimants and all other workers who have reached sixty-five years of age has a rational basis. PTD payments are a periodically paid wage loss protection benefit that continues after the injury for the rest of the employee's life, based on his or her average weekly wage, because these persons cannot return to the workforce. The PTD offset provision for employer-paid retirement benefits and one-half of social security retirement payments takes the following factors into account: contributions made by employers to retirement benefits of employees; the inability of the injured PTD persons to re-enter the work force; and the financial burden on employers to pay a percentage of the employees' wages, following the PTD injury, for the rest of the injured workers' lives.

Temporary partial disability (TPD), temporary total disability (TTD), and permanent partial disability (PPD) benefits, on the other hand, are designed to assist the injured employee in returning to work, are restrictively capped, and may be fully realized before the injured worker reaches the age of sixty-five. Not requiring the offset encourages these workers to resume employment.

The General Assembly's choice not to apply the offset to persons who suffer a PTD prior to their forty-fifth birthday has a rational basis. This age demarcation reflects the "young person" distinction utilized for purposes of the social security act. The General Assembly has a rational basis in requiring employers to pay full workers' compensation benefits, without offset, to younger workers who have less of an opportunity to accrue retirement benefits, while coordinating the benefits of those who have a longer opportunity to work for a wage and accrue retirement benefits.

### A.

### Equal Protection Standard

Having summarized our holding and rationale, we proceed with our equal protection analysis. We first turn to the legal standards governing our review of Petitioners' constitutional challenge to the offset provision. The Fourteenth Amendment to the United States Constitution provides that, "[n]o state .... shall deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. Similarly, the Colorado Constitution affords an equivalent level of equal protection through Article II, Section 25, of the Colorado Constitution. *See Western Metal Lath, Ltd. v. Acoustical & Constr. Supply, Inc.,* 851 P.2d 875, 880 (Colo.1993).

■ Under equal protection law, judicial scrutiny of a statute varies according to the type of classification involved and the nature of the right affected. *See Pace Membership*

*Warehouse v. Axelson,* 938 P.2d 504, 506 (Colo.1997). The rational basis standard of review applies when a legislative classification does not involve a suspect class or abridgement of a fundamental right triggering strict scrutiny and also when the classification does not trigger an intermediate standard of review. *See id.; Romero,* 912 P.2d at 66.

■■■■ Receipt of workers' compensation benefits is not a fundamental right. *See Romero,* 912 P.2d at 66; *Duran v. Industrial Claim Appeals Office,* 883 P.2d 477, 482 (Colo.1994). Moreover, strict scrutiny and intermediate review are not applicable to classifications based on age. *See Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 313–14, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). Because the constitutional challenge here involves a workers' compensation statute that makes distinctions based on age, severity of injury, and types and amount of benefits payable, we apply the rational basis standard of review.

### B.

### *Rational Basis Review*

■■■■ We presume that a statute is constitutional until shown otherwise. *See Colorado Soc'y of Community & Institutional Psychologists, Inc. v. Lamm,* 741 P.2d 707, 711 (Colo.1987). Under rational basis review, the person challenging the statute's constitutionality must show that the classification lacks a legitimate governmental purpose and, without a rational basis, arbitrarily singles out a group of persons for disparate treatment in comparison to other persons who are similarly situated. *See Romero,* 912 P.2d at 66; *See Western Metal,* 851 P.2d at 880. The party asserting the unconstitutionality of the statute bears the burden of proving its invalidity beyond a reasonable doubt. *See Lamm,* 741 P.2d at 711.

■■■■ In the context of social and economic regulation, our review is especially deferential to legislative choice: "[S]o long as it is arguable that the other branch of government had [a rational] basis for creating the classification, a court should not invalidate the law." 2 Ronald D. Rotunda, et. al., *Treatise on Constitutional Law,* § 18.3 (1986). "[I]n cases involving social and economic benefits, the [judiciary] has consistently refused to invalidate on equal protection grounds, legislation which it simply deemed unwise or unartfully drawn." *United States R.R. Retirement Bd. v. Fritz,* 449 U.S. 166, 175, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980).

### 1.

### *Similarly Situated*

The threshold issue here is whether section 8–42–103(c)(II) and (IV) results in dissimilar treatment of similarly situated individuals. *See Duran,* 883 P.2d at 481; *Western Metal,* 851 P.2d at 880. For purposes of further analysis, we assume that all injured claimants are similarly situated. They have suffered a work place injury, and their recourse for seeking compensation resulting from an industrial disability is set forth solely by the Act.

The offset provision treats injured workers differently. First, the statute differentiates between persons who have reached their sixty-fifth birthday based on the severity of injury suffered. The offset applies to the periodic payments of PTD workers aged sixty-five or older who receive social security or employer-paid retirement benefits for the same time period. The offset does not apply to injured workers who may be receiving TPD, TTD, or PPD benefits after reaching their sixty-fifth birthday. *See* § 8–42–103(1)(c)(II)(A),(B). Second, the statute differentiates between PTD claimants injured before the age of forty-five and those injured afterwards. *See* § 8–42–203(1)(c)(IV).

Accordingly, for purposes of determining whether this section of the statute is unconstitutional, we accept Petitioners' characterization that the offset provision results in dissimilar treatment of similarly situated persons. We proceed to decide (1) whether the offset provision serves a legitimate governmental purpose, and (2) whether the General Assembly had a rational basis for applying the offset requirement only to PTD workers when they reach their sixty-fifth birthday if their injuries occurred on or after their forty-fifth birthday.

**2.**

*Legitimate Governmental Purpose: Preventing a Duplication of Benefits*

We have upheld several workers' compensation offset provisions based upon a duplication of benefits rationale. *See Pace,* 938 P.2d at 508–09, (Colo.1997) (upholding offset of disability benefits against unemployment insurance benefits); *L.E.L. Constr. v. Goode,* 867 P.2d 875, 879 (Colo.1994) (holding that federal social security mother's insurance benefits are "periodic death benefits" that can be deducted from state workers' compensation death benefits); *Myers v. State,* 162 Colo. 435, 438, 428 P.2d 83, 85 (1967) (upholding disability offset against disability annuity). The United States Congress also employs offset provisions. *See, e.g., Richardson v. Belcher,* 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971) (upholding federal offset of workers' compensation against social security disability benefits).

Petitioners, nevertheless, contend that social security retirement benefits, because they constitute an employee "entitlement," cannot legitimately be coordinated with PTD benefits under a duplication of benefits rationale. CCIA and SIF argue that social security retirement benefits and PTD payments are part of an overall employee wage loss protection program. Thus, the General Assembly may legitimately require their coordination. We agree with CCIA and SIF.

**a.**

*Romero Is Not Dispositive*

We disagree with Petitioners' assertion that our decision in *Romero* compels us to hold that section 8–42–103(1)(c)(II) is unconstitutional. In *Romero,* we held that section 8–42–111(5), 3B C.R.S. (1991 Supp.), another provision of the Act, was unconstitutional.[2]

The provision at issue in *Romero* differs significantly from the offset provision here at issue. Section 8–42–111(5), 3B C.R.S. (1991 Supp.), terminated the injured workers' PTD benefits based solely on the assumption that all injured workers receive retirement benefits when they reach their sixty-fifth birthday.

In *Romero,* we pointed out the fallacy of this assumption: "The assertion that § 8–42–111(5) prevents double recovery of benefits is invalid because many persons age sixty-five and older do not receive social security benefits, or receive benefits that are too meager to permit them to quit working." *Romero,* 912 P.2d at 68 n. 5. Because eligibility for social security retirement payments depends on prior qualifying employment, an injured worker could actually receive little or no social security retirement payments.

Under these circumstances, the sole effect of the provision was to terminate PTD payments, not to coordinate benefits available to a person who cannot earn a wage because of a permanently and totally disabling industrial injury. Thus, we stated our holding in *Romero* as follows:

> The legislature is not justified in *eliminating* workers' compensation benefits for all persons age sixty-five and older who have been permanently and totally disabled merely based on the administratively convenient presumption that such persons receive retirement benefits. Therefore, section 8–42–111(5) impermissibly denies persons age sixty-five and older equal protection of the laws for mere administrative convenience.

912 P.2d at 68 (emphasis added).

In contrast, the offset provision at issue in this case operates to reduce the periodic payments otherwise payable to the injured PTD worker after the age of sixty-five only if the worker is also eligible to receive social security or employer-paid retirement benefits for the same period. We have previously recognized that prevention of duplication of benefits serves a legitimate governmental purpose, if the two sets of benefits being coordinated can legitimately be placed in a common pool of benefits. *See Pace,* 938 P.2d at 508; *see also Romero,* 912 P.2d at 67; *Goode,* 867 P.2d at 879; *Engelbrecht v. Hartford Accident & Indemnity Co.,* 680 P.2d 231, 233 (Colo.1984).

---

**2.** The provision at issue in *Romero* stated:
For injuries occurring on or after July 1, 1991, compensation [for permanent total disability] shall cease when the employee reaches the age of sixty-five years.
§ 8–42–111(5), 3B C.R.S. (1991 Supp.).

**648**

Petitioners argue that *Romero* forecloses the legislature from placing social security retirement benefits and PTD benefits in a common pool. They rely on certain language in *Romero* characterizing social security retirement benefits as "old-age entitlements" which serve a different purpose from disability benefits.[3] In *Romero*, we discussed the contention that "withholding workers' compensation benefits from persons age sixty-five and older ... is not rationally related to the goal of preventing duplicate benefits because workers' compensation benefits do not serve the same purpose as retirement benefits." *Romero*, 912 P.2d at 68.

However, because we held that section 8–42–111(5) impermissibly denied persons age sixty-five and older equal protection of the laws for mere administrative convenience, our discussion of the nature of social security benefits was tentative and not dispositive. *See id.* at 67–68. We recognized, nonetheless, that the legislature had provided an offset provision to address duplication of benefits, should social security retirement benefits be viewed as replacing wage loss resulting from advanced age:

> Even if social security old age benefits are construed to be a replacement for wage loss resulting from advanced age, *then preventing double recovery of old age benefits and permanent total disability benefits is already achieved by § 8–42–103(1)(c)(II)*, 3B C.R.S. (1995 Supp.), which deducts the value of the social security old age benefit from the award for workers' compensation benefits.

*Id.* at 68 n. 4. (emphasis added).

### b.

### *Social Security Retirement Benefits and PTD Benefits Share a Wage Loss Protection Purpose*

Through the offset provision, the General Assembly has chosen to place social security retirement and PTD benefits into the same pool of benefits. Accordingly, we must determine whether coordination of these types of benefits serves a legitimate governmental purpose.

In proceeding with our analysis, we recognize that the legislature has provided a straightforward declaration of legislative intent that we must effectuate when construing the Workers' Compensation Act and when determining the constitutionality of its provisions.

> It is the intent of the general assembly that the "Workers' Compensation Act of Colorado" be interpreted so as *to assure the quick and efficient delivery of disability and medical benefits to injured workers at a reasonable cost to employers,* without the necessity of any litigation, recognizing that the workers' compensation system in Colorado is based on a mutual renunciation of common law rights and defenses by employers and employees alike.

§ 8–40–102(1), 3 C.R.S. (1998)(emphasis added). The Act intends to compensate injured workers through a reliable source and amount of payment, while controlling costs and minimizing claim delay. *See Engelbrecht*, 680 P.2d at 233; *Bellendir v. Kezer*, 648 P.2d 645, 647 (Colo.1982).

Under workers' compensation law, lost earning capacity is compensable only in the form of statutorily-prescribed disability benefits. *See generally* 4 Arthur Larson, *Larson's Workers' Compensation Law* § 57.11 at 10–2 (1994) ("It has been stressed repeatedly that the distinctive feature of the compensation system, by contrast with tort liability, is that its awards are made not for physical injury as such, but for 'disability' produced by such injury.")

---

**3.** In *Romero*, we stated the following:

Social security retirement benefits are provided to persons over age sixty-five regardless of injury, as long as the recipient has reached the statutory age after having been employed and having contributed to the Social Security Trust Fund. These benefits are not disability benefits, but are old-age entitlements serving the same function as pension payments. In contrast, workers' compensation benefits are provided to compensate employees who suffer work-related injuries for loss of income resulting from such injuries. Workers' compensation benefits are paid from insurance provided by employers in exchange for the employee's forbearance from suing the employer in tort.

*Id.* at 67–68 (citations omitted).

Workers' compensation benefits include elements of medical impairment compensation and wage loss protection. *See Colorado AFL–CIO v. Donlon*, 914 P.2d 396, 404 (Colo. App.1995). The "disability concept is a blend of two ingredients, whose recurrence in different proportions" has received a great deal of legislative and judicial attention. 4 Larson, *supra*, at § 57.11, 10–16. The first ingredient is medical incapacity evidenced by a loss of a limb, muscular movement, or other bodily function. The second ingredient is wage-earning incapacity evidenced by an employee's inability to resume his or her prior work. *See* 4 Larson, *supra*, at § 57.11, 10–16.

Social security retirement benefits arise from employment; both the employee and the employer make contributions in recognition of the fact that the employee may discontinue economically productive activity as he or she becomes older. Employers and employees contribute to the system as a result of an employee working some period of time at an average taxable salary. *See* 42 U.S.C. § 415 (1994). Benefits are payable when the employee or former employee (1) is a fully insured individual, (2) has attained age sixty-two, and (3) has filed application for old-age insurance benefits. *See* 42 U.S.C. § 402(a)(1994).[4]

We have previously recognized the validity of the General Assembly placing placed workers' compensation benefits, social security retirement benefits, and unemployment benefits into a general pool of wage loss compensation benefits for purposes of an offset provision. *See Goode*, 867 P.2d at 879–80. In *Goode*, we relied upon Larson's discussion:

Once it is recognized that work[ers'] compensation is one unit in an overall system of wage-loss protection, ... the conclusion follows that duplication of benefits from different parts of the system should not ordinarily be allowed.

....

[Offsetting] is inevitable, once it is recognized that workmen's compensation, unemployment compensation, nonoccupational sickness and disability insurance, and old age and survivors' insurance are all parts of a system based upon a common principle.

9 Larson, *supra*, § 97.00–97.10, at 18–9 to 18–10 (1998).

Other state courts have recognized that workers' compensation benefits and social security retirement benefits share a common purpose. *See, e.g., Injured Workers of Kan. v. Franklin*, 262 Kan. 840, 942 P.2d 591, 613–14 (Kan.1997); *McClanathan v. Smith*, 186 Mont. 56, 66–67, 606 P.2d 507, 513–14 (Mont. 1980); *Vogel v. Wells Fargo Guard Servs.*, 937 S.W.2d 856, 860–61 (Tenn.1996); *Harris v. Department of Labor & Indus.*, 120 Wash.2d 461, 843 P.2d 1056, 1066 (Wash. 1993). The Washington Supreme Court, for example, has held that workers' compensation and federal old age social security benefits "serve the same purpose: to restore earnings due to wage loss. The cause of wage loss—whether it be old age, disability, or unemployment—is irrelevant." *Harris*, 843 P.2d at 1066. The Washington court quoted another portion of Larson's treatise in support of its holding:

Wage-loss legislation is designed to restore to the worker a portion, such as one-half to two-thirds, of wages lost due to the three major causes of wage-loss: physical disability, economic unemployment, and old age. The crucial operative fact is that of wage loss; the cause of the wage loss merely dictates the category of legislation applicable. Now if a workman undergoes a period of wage loss due to all three conditions, it does not follow that he should receive three sets of benefits simultaneously and thereby recover more than his actual wage. He is experiencing only one wage loss and, in any logical system,

**4.** An individual who satisfies each of these criteria is entitled to old-age insurance benefits at age 65 for a claimant who attains early retirement age, that is, age 62, before January 1, 2000. *See* 42 U.S.C. § 416(*l*)(2) (1994). For claimants who attain early retirement age after December 31, 1999 but before January 1, 2005, the retirement age is scheduled to gradually rise to 66 years of age by increasing the age for full benefits by two months per year for six years so that the normal age of retirement in the year 2005 will be 66 years of age. *See* 42 U.S.C. § 416(*l*)(1)(B) (1994).

should receive only one wage-loss benefit. . . .

*Harris*, 843 P.2d at 1066 (quoting 4 Arthur Larson, *Workmen's Compensation* § 97.10 (1990)).[5]

The United States Congress has employed provisions which demonstrate that social security retirement payments have, at least in part, a wage loss protection characteristic. First, the Social Security Act states that an individual who receives social security retirement benefits *cannot* collect social security disability benefits. *See* 42 U.S.C. § 423(a)(1)(B)(1994).[6] This provision evidences a commonality of purpose, shared by retirement and disability benefits. Second, an individual may earn wages up to a certain amount without reduction of his or her social security retirement benefits. If a social security recipient earns above the designated amount, then his or her retirement benefits must be reduced. *See* 42 U.S.C. § 403(b) (1994). This provision again suggests that retirement is, at least in part, a form of wage loss protection.

The federal reduction for excess earnings ceases once the individual reaches age seventy. *See* 20 C.F.R. § 404.435(a) (1998). A worker who is seventy years of age or older may earn full social security retirement benefits and continue to work. These provisions, taken together, establish that the components of social and economic legislation is a policy choice for lawmakers.[7]

In *Pace*, 938 P.2d at 504, we upheld a provision that offset workers' compensation benefits by the amount of unemployment insurance benefits being paid for the same time period. *See* § 8–73–112(1)(f), 3B C.R.S. (1995 Supp.). We viewed the legislative intent of those two benefits, workers' compensation and unemployment insurance, as sharing a wage loss purpose even though they arise from different circumstances and serve different functions. While workers' compensation results from loss of earning capacity due to an industrial injury, unemployment insurance benefits are payable to individuals who are willing and able to work but cannot find employment. Nevertheless, we gave effect to the General Assembly's decision to require their coordination in calculating the amount of workers' compensation payments owed.

Acting upon the presentations made to it and its choice of social and economic objectives to be served, the Colorado legislature has crafted an offset provision that accommodates both the wage loss-like character and the entitlement-like character of social security retirement benefits by allowing—and limiting—reduction of the employer-owed disability compensation to *one half of the social security retirement benefits payable to the injured worker or dependents,* but not less than zero. *See* § 8–42–103(1)(c)(II). In light of *Goode* and *Pace,* where we held that the General Assembly may place social security, employment compensation, and workers'

---

5. For the contrary view, see *Golden v. Westark Comm. College,* 333 Ark. 41, 969 S.W.2d 154, 158–60 (Ark.1998); *State v. Richardson,* 198 W.Va. 545, 482 S.E.2d 162, 167 (W.Va.1996); *Sasso v. Ram Property Management,* 431 So.2d 204, 219 (Fla.Dist.Ct.App.1983), *aff'd.,* 452 So.2d 932 (Fla.1984).

6. Section 423(a)(1) of the Federal Old–Age, Survivors, and Disability Insurance Benefits Act provides:
  (1) Every individual who—
    (A) is insured for disability insurance benefits (as determined under (c)(1) of this section),
    *(B) has not attained retirement age* (as defined in section 416(*l*) of this title),
    (C) has filed application for disability insurance benefits, and
    (D) is under a disability (as defined in subsection (d) of this section),

shall be entitled to a disability insurance benefit. . . .
42 U.S.C. § 423(a)(1)(1994) (emphasis added).

7. Petitioners argue that the Colorado statute improperly discriminates between PTD workers who are eligible to receive social security retirement benefits at age sixty-two and PTD workers who have reached their sixty-fifth birthday. While Colorado's retirement offset provision does not apply to PTD workers between the ages of sixty-two and sixty-five, the legislature's choice to apply Colorado's retirement and workers' compensation benefits offset to periodic PTD payments after age sixty-five is within its discretion. By doing so, the legislature has taken into account the intermingled web of benefits and offsets applicable under federal law, *see* 42 U.S.C § 423(a)(1) (1994), and state law, *see* § 8–42–103(1)(c)(I), 3 C.R.S. (1998).

compensation benefits into the same pool of funds for coordination, we hold that the offset provision at issue here serves a legitimate purpose in preventing duplication of benefits.

### 3.

### *Rational Means of Achieving Legitimate Government Purpose*

Having determined that the offset provision serves a legitimate government purpose, we now assess whether the classifications created by section 8–42–103(1)(c)(II) and (IV) are rationally related to that purpose.

### a.

### *PTD Workers Versus All Others*

Petitioners argue that our decision in *Romero* has already determined that the legislature cannot legitimately distinguish between PTD and PPD workers. We said the following in that case:

> The irrationality of section 8–42–111(5) is illustrated by the statute's own provisions.... The statute bars persons age sixty-five and older from recovering workers' compensation benefits only if those persons are permanently and totally disabled. This discriminatory classification belies the justification for section 8–42–111(5).

*Romero*, 912 P.2d at 69.

Petitioners suggest that this language in *Romero* creates a per se standard, preventing distinctions based on PTD versus all other types of disabilities. However, our constitutional concern in *Romero* was the arbitrary elimination of benefits. We held that a PTD versus all other claimants distinction could not be made in the context of a provision which (1) completely eliminated workers' compensation benefits, and (2) operated irrespective of whether the worker would actually receive retirement benefits. Because the PTD versus all other claimants distinction in section 8–42–111(5), 3B C.R.S. (1991 Supp.), was not rationally related to the governmental goal of preventing a duplication of benefits, it was unconstitutional.

Section 8–42–103(1)(c)(II) and (IV) is very different from section 8–42–111(5). While section 8–42–103(1)(c)(II) treats PTD workers differently from workers receiving TTD, TPD, and PPD payments after their sixty-fifth birthday, we cannot determine a statutory classification to be unconstitutional under rational basis review, unless no conceivable set of facts justifies the legislature's choice. *See Pace*, 938 P.2d at 507; *Duran*, 883 P.2d at 483.

The rational basis for the General Assembly's choice to distinguish PTD workers who have reached their sixty-fifth birthday from all other injured workers of the same age resides in the purposes of Colorado's four-part classification of disabilities: (1) temporary total, (2) temporary partial, (3) permanent partial, and (4) permanent total. *See* § 8–42–105, 3 C.R.S. (1998) (TTD); § 8–42–106, 3 C.R.S. (1998) (TPD); § 8–42–107, 3 C.R.S. (1998) (PPD); § 8–42–111, 3 C.R.S. (1998) (PTD); *see generally*, 4 Larson, *supra*, § 57.12(a), at 10–17 to 10–19.

Under sections 8–42–105 and 8–42–106, temporary disability benefits—both total and partial—are payable until the claimant reaches maximum medical improvement (MMI), unless such benefits have already terminated for other reasons. *See Donlon*, 914 P.2d at 401. Both types of temporary disability benefits cease once a claimant reaches MMI. At that time, the extent of permanent disability can be appraised for the purpose of either a permanent partial or a permanent total award. *See* 4 Larson, *supra*, § 57.12(b), at 10–26. When a claimant reaches MMI, his or her degree of permanent medical impairment (if any) is determined in the course of calculating an award for PPD under section 8–42–107(2) and (8) or PTD under section 8–42–111. A claimant qualifies for PTD payments only if she or he "is unable to earn any wages in the same or other employment." § 8–40–201(16.5)(a), 3 C.R.S. (1998).

Each of the four classifications reflects the duration and severity of the claimant's disability and determines the amount of benefits available to injured workers. CCIA and SIF assert a three-fold rational basis for the disparate treatment of PTD claimants in comparison to TPD, TTD, and PPD claimants to whom social security and employer-paid retirement benefits are payable after the per-

son's sixty-fifth birthday. They include: maintaining the fiscal integrity of the workers' compensation system; allocating the fiscal burden equitably among funding sources; and controlling costs to employers while providing legislatively-intended benefits to injured workers. We agree that the offset provision has a rational basis.

Considering the purpose of the offset provision—preventing a duplication of wage loss protection payments for which an injured worker is eligible in the same time period after age sixty-five—it is reasonable to distinguish PTD workers from TTD, TPD, and PPD workers. TTD and TPD awards are temporary; they cease when the worker reaches MMI. PPD awards are limited in time and capped in amount according to a statutory schedule or formula on the assumption that the worker may earn future wages.[8] *See* § 8–42–107. In contrast, PTD awards are designed to provide wage loss protection for the life of an injured worker who is unable to return to the work force. *See* § 8–40–201(16.5)(a).

The choice of sixty-five as the age to commence coordination of retirement payments and PTD payments has a rational basis. Under federal law, for example, social security disability benefits cease at age sixty-five in favor of retirement benefits. This has been the age to which Americans traditionally look for ceasing full time employment, deciding to work part time or not at all, or shifting to an alternative pursuit that may or may not pay a wage.

Allowing non-PTD claimants who have reached their sixty-fifth birthday to receive their social security or employer-paid retirement payments, while also receiving their remaining workers' compensation payments up to the statutory cap, recognizes the relatively limited amount of their compensation payments and provides an incentive for them to keep, or return to, full-time or part-time work if they choose not to retire. On the other hand, in addressing the offset to those cases in which the overlap between retirement benefits and disability benefits is the greatest and the most prolonged, the General Assembly has crafted a reasonable legislative balance between employee benefits and employer costs in maintaining the workers' compensation program.

b.

### PTD Claimants Injured Before Age Forty–Five Versus Afterwards

Within the offset provision, the legislature has further distinguished between PTDs who incurred their injuries prior to age forty-five and those who incurred their injuries at age forty-five or older. Under section 8–42–103(1)(c)(IV), the retirement payment offset applies only if the injury of the PTD worker occurred after reaching the age of forty-five. CCIA and SIF argue that this distinction has a rational basis because it recognizes the relatively limited opportunity to accrue retirement benefits available to individuals who become PTD comparatively early in their working lives. We agree.

Section 8–42–103(1)(c)(IV), previously section 8–51–101(1)(c)(IV), originated as an amendment to the retirement offset provision of the Workers' Compensation Act, adopted by the General Assembly as part of House Bill 1322 in 1989. The legislature adopted this "compromise amendment" to accommodate the needs of both injured workers and employers. Testimony of February 8, 1989 before the House Committee on Agriculture, Livestock, and Natural Resources reveals the basis for this distinction:

> [A]n employee who becomes permanently and totally disabled at age 30 no longer pays into the Social Security system, so that when he retires he has the maximum dollar amount. He's not making $42,000 a year. Therefore, when he retires, he's not going to get $800 a month. What he's going to get is based upon what's paid in

---

**8.** PPD benefits are calculated either according to a schedule of injuries, specified by type, duration, and amount of payment, or if the injury results in permanent medical impairment and the employee has an injury that is not specified by the schedule, the employee is limited to medical impairment benefits as specified in subsection (8) of this section. *See Mountain City Meat Co. v. Oqueda*, 919 P.2d 246, 251–52 (Colo.1996). In any event, once the statutory cap is reached, workers' compensation payments cease.

when he became permanently and totally disabled ... [T]he argument from the claimant's perspective is ... [that] you've deprived that injured worker of being able to pay in maximum dollars into Social Security so that he gets a higher retirement at age 65.

Hearings on H.B. 1322 before the House Committee on Agriculture, Livestock, and Natural Resources, 57th General Assembly, First Regular Session (Feb. 8, 1989) (statement of Robert Turner, workers' compensation attorney).

Thus, the legislature sought to craft a reasonable solution that would mitigate the effect of early PTD,[9] striking a balance between the goal of preventing duplication of benefits and the equities of individuals whose retirement benefits are substantially lower by virtue of their early-acquired workplace injury. In choosing age forty-five as the demarcation point, the General Assembly borrowed from the Social Security Act's disability benefits provisions. "The reason that 45 was selected is that under the Social Security Act at the present time, you're considered a younger individual if you're under the age of 45." *Id.; see* 20 C.F.R. pt. 404, Subpart P, App. 2, § 201.00(h) (1998)(defining the term "younger individual").[10]

Therefore, we conclude that a rational basis exists for differentiating PTD claimants who suffered their injuries prior to age forty-five and those whose injuries occurred afterwards. *See Christie v. Coors Transp. Co.,* 933 P.2d 1330, 1333 (Colo.1997).

### c.

*Summary of Constitutional Analysis*

In summary, with regard to Petitioners' constitutional challenge, the fact that the legislature's line-drawing may be imperfect, may result in some inequity, or could have been tailored more precisely, does not warrant a reviewing court to strike down the statute. The standard of review is not "mathematical nicety." *Duran,* 883 P.2d at 483. Faced with practical legislative dilemmas, the General Assembly is empowered to craft solutions that roughly accommodate varying interests and take costs and benefits of the workers' compensation program and employer contributions to social security and employer paid retirement programs into account. *See id.* (upholding the workers' compensation benefits scheme that calculates benefits based upon severity of injury).

Here, the statutory distinction carries out legitimate policy choices of the General Assembly. In the words of Colorado's statute, the purpose of the Workers' Compensation Act is to "assure the quick and efficient delivery of disability and medical benefits to injured workers at a reasonable cost to employers." § 8–40–101(2), 3 C.R.S. (1998).

### III.

*Statutory Challenge: Retirement Benefits Received Prior to Injury*

■ Culver contends individually that the district court erred in its application of section 8–42–103(1)(c)(II) because he began receiving social security retirement benefits prior to incurring his workplace injury. Because he was receiving both social security retirement benefits and wages *before* the 1992 injury, he argues that application of the offset provision would penalize him twice. Not only would he receive just two-thirds of

---

**9.** Robert Turner, an attorney specializing in workers compensation, testified that the below forty-five-year-old cutoff for retaining both social security retirement and disability compensation benefits is "a solution that helps solve that problem." Another witness explained that "the compromise is to offset 50% of the retirement benefits at age 65, similar to what is done under social security disability. But, since workers' compensation has no cost of living increase in the law, whatsoever, you don't offset those people who become ... disabled early in life." Hearings on H.B. 1322 before the House Committee on Agriculture, Livestock, and Natural Resources, 57th General Assembly, First Regular Session (Feb. 8, 1989).

**10.** Under 20 C.F.R., subpt. P, app. 2, claimants for social security disability benefits who are age forty-five and older are automatically considered disabled, and are, therefore, capable of collecting disability benefits, if they: 1) are restricted to sedentary work, 2) are unskilled or have no transferable skills, 3) have no relevant past work or can no longer perform vocationally relevant past work, and 4) are either illiterate or unable to communicate in the English language.

his wages in the form of workers' compensation benefits, those benefits would then be reduced by one-half the amount of his retirement benefits.

Culver would have us conclude that the General Assembly did not intend such a result. We disagree. The statute does not so provide. Section 8–42–103(1)(c)(II) states in pertinent part:

> In cases where it is determined that periodic benefits granted by the federal old-age, survivors, and disability insurance act or employer-paid retirement benefits *are payable* to an individual and the individual's dependents when the individual reaches the age of sixty-five years, *the aggregate benefits payable* for permanent total disability pursuant to this section shall be reduced, but not below zero:
>
> (A) By an amount equal nearly as practical to one-half such federal benefits
>
> . . . .

§ 8–42–103(1)(c)(II) (emphasis added).

In ascertaining legislative intent, we must accord words and phrases their plain and obvious meaning. *See* § 2–4–101, 1B C.R.S. (1980); *see also People v. District Court,* 713 P.2d 918, 921 (Colo.1986); *Engelbrecht,* 680 P.2d at 233. Contrary to Culver's contention, this provision does not limit application of the offset to instances in which both types of payments are intended to compensate wage loss for the worker's industrial disability. The plain language of section 8–42–103(1)(c)(II)(A) requires that social security retirement benefits be offset against the injured employee's workers' compensation benefits, despite the fact that retirement benefits are not designed to compensate a claimant for an industrial injury.

The order in which a worker becomes eligible for these benefits does not make a difference, given the statute's plain wording. The General Assembly designed the social security offset to coordinate and reduce social security retirement, employer-paid retirement, and workers' compensation payments for the same time period once a PTD worker reaches age sixty-five. *See Engelbrecht,* 680 P.2d at 233. The statute operates the same—whether social security retirement benefits are payable to him or her prior to

the industrial injury, or in the other order. Thus, we affirm the Court of Appeals' determination that section 8–42–103(1)(c)(II) and (IV) applies to Culver.

## IV.

Accordingly, we hold that the offset provision of section 8–42–103(1)(c)(II) and (IV) serves a legitimate governmental purpose, has a rational basis for the classifications it makes, and is constitutional. We also hold that it applies regardless of the order in which the worker was injured or became eligible for social security retirement benefits. Thus, we affirm the judgments of the court of appeals in *Culver* and *Stolworthy,* and the ICAO order in *Duddy.*