The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
February 8, 2018

## 2018COA19

### No. 17CA0322, *Montoya v. ICAO* — Labor and Industry — Workers' Compensation — Temporary Partial Disability

In this workers' compensation action, a division of the court of appeals considers whether a panel of the Industrial Claim Appeals Office erred in requiring a claimant seeking temporary partial disability benefits to demonstrate both medical incapacity and loss of wage earnings. The majority concludes that, although the concept of "disability" incorporates both medical incapacity and loss of wage earnings, a claimant is not required to prove both components to establish entitlement to disability benefits under the Workers' Compensation Act. Because the claimant here showed that she lost wages due to a work-related injury, she was entitled to temporary partial disability benefits.

Accordingly, the division sets aside the order of the Industrial Claim Appeals Office panel.

The dissent relies on a two-part definition of "disability" set forth in *Culver v. Ace Electric*, 971 P.2d 641 (Colo. 1999), to conclude that the Industrial Claim Appeals Office panel did not err. Because the claimant here did not demonstrate that any medical incapacity prevented her from doing her job, the dissent would affirm the order holding that she was not entitled to temporary partial disability benefits.

COLORADO COURT OF APPEALS                                    **2018COA19**

Court of Appeals No. 17CA0322
Industrial Claim Appeals Office of the State of Colorado
WC No. 4-974-821

Myra Montoya,

Petitioner,

v.

Industrial Claim Appeals Office of the State of Colorado; Ethan Allen Retail,
Inc.; and Travelers Indemnity Company,

Respondents.

ORDER SET ASIDE AND CASE
REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE TAUBMAN
Richman, J., concurs
Furman, J., dissents

Announced February 8, 2018

McDivitt Law Firm, Aaron S. Kennedy, Colorado Springs, Colorado, for
Petitioner

No Appearance for Respondent Industrial Claim Appeals Office

Ray Lego & Associates, Michael J. Buchanan, Gregory W. Plank, Greenwood
Village, Colorado, for Respondents Ethan Allen Retail, Inc., and Travelers
Indemnity Company

¶ 1     In this workers' compensation action, claimant, Myra Montoya, seeks review of a final decision of the Industrial Claim Appeals Office (Panel) holding that she was not entitled to temporary partial disability (TPD) payments because her injury did not meet the criteria for a "disability." We conclude that the Panel interpreted "disability" too narrowly and therefore set aside its decision.

## I. Background

¶ 2     Claimant worked as an interior designer for employer, Ethan Allen Retail, Inc. On December 30, 2014, claimant suffered admitted, work-related injuries to her left ankle and foot, as well as to her back and shoulders. Her treatment included numerous medical, physical therapy, massage therapy, chiropractic, and dry needling appointments. Although she attended many medical appointments, claimant was neither given work restrictions nor medically limited in her ability to work.

¶ 3     Claimant's income was entirely based on commissions. While she was undergoing treatment for her work-related injuries, she was required to schedule some medical appointments during her normal working hours. Because of the appointments, she was

1

absent from the showroom floor and could not meet potential and current clients. She testified that those absences — all of which occurred in 2015 in the twelve months after her injury — caused her to lose more than $20,000 in commission earnings, as evidenced by the difference between her 2014 earnings ($69,701.04) and her 2015 earnings ($44,853.82). She also testified that, at the time of the hearing in June 2016, her earnings had rebounded and she had earned over $45,000 during the first half of 2016 alone.

¶ 4    After conducting a hearing, the administrative law judge (ALJ) concluded that "there was no evidence in the record . . . that [c]laimant's ATP [authorized treating physician] took her off work when she had medical appointments." Similarly, he concluded "there was no evidence [c]laimant was unable to perform her job duties, although she testified she had [received] assistance and also had to leave on occasion because of medical appointments." However, the ALJ also found that claimant lost commissions as a result of her work-related injuries. Specifically, he concluded that claimant "sustained a wage loss, despite having a full duty release to return to work." Based on these findings and conclusions, the

ALJ awarded claimant TPD benefits to compensate her for the commissions she lost while attending medical appointments.

¶ 5     The Panel affirmed that part of the ALJ's order determining that claimant overcame the rating of the division-sponsored independent medical examination physician and that she was entitled to additional permanent partial disability benefits. However, the Panel set aside that part of the ALJ's order awarding claimant TPD benefits. The Panel reasoned that disability benefits are only available if a claimant demonstrates both "'medical incapacity' evidenced by loss or impairment of bodily function" and "temporary loss of wage earning capacity, which is evidenced by the claimant's inability to perform his or her prior regular employment." Here, because the ALJ had found that claimant had no work restrictions and was able to perform all her job duties, albeit with some assistance, the Panel held that she did not establish the requisite "medical incapacity" prong of disability and therefore, as a matter of law, was not entitled to receive TPD benefits. Claimant now appeals.

## II. Analysis

¶ 6     Claimant contends that the Panel's interpretation of "disability" is too narrow.  She argues that the Panel misinterpreted the Workers' Compensation Act (Act) by disregarding a key difference between the statutes providing for the automatic termination of TPD and temporary total disability (TTD) benefits.  In addition, claimant argues that the Panel improperly ignored its own precedent by failing to acknowledge that her health care providers had "implicitly imposed" restrictions on her.  We agree with claimant's conclusion, but reach it by a different analysis.

### A. Definition of Disability

¶ 7     In reaching its decision, the Panel relied on a 1999 Colorado Supreme Court decision that described disability benefits.  The court noted:

> Workers' compensation benefits include elements of medical impairment compensation and wage loss protection.  *Colorado AFL-CIO v. Donlon*, 914 P.2d 396, 404 (Colo. App. 1995).  The "disability concept is a blend of two ingredients, whose recurrence in different proportions" has received a great deal of legislative and judicial attention.  The first ingredient is medical incapacity evidenced by a loss of a limb, muscular movement, or other bodily function.  The second ingredient is

wage-earning incapacity evidenced by an employee's inability to resume his or her prior work.

*Culver v. Ace Elec.*, 971 P.2d 641, 649 (Colo. 1999) (quoting 4 Arthur Larson, *Larson's Workers' Compensation Law* § 57.11, at 10-16 (1994) (now found at 6 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 80.02 (2015)); *see also Donlon*, 914 P.2d at 404 (noting that disability benefits "are intended to compensate a claimant for the extent to which his or her physical impairment impacts upon that claimant's past and future ability to earn wages"). However, we conclude that the Panel's reliance on the *Culver* court's definition of "disability" in Colorado is misplaced.

¶ 8        Although the *Culver* court described "disability" as having both medical and wage loss components, it does not necessarily follow that both elements must be met to justify a disability award. *Culver* derived its characterization of "disability" directly from *Larson's Workers' Compensation Law*. Scrutinizing the excerpt in *Larson's*, however, quickly reveals that the supreme court quoted only a portion of the *Larson's* discussion. When read in context, it is clear that *Larson's*, and thus the supreme court, did not intend to

mandate evidence of both prongs in order for a claimant to receive

disability benefits.  *Larson's* states:

> It has been stressed repeatedly that the distinctive feature of the compensation system, by contrast with tort liability, is that its awards, apart from medical benefits, . . . are made not for physical injury as such, but for "disability" produced by such injury.  The central problem, then, becomes that of analyzing the unique and rather complex legal concept which, by years of compensation legislation, decision, and practice, has been built up around the term "compensable disability."
>
> The key to the understanding of this problem is the recognition, at the outset, that the disability concept is a blend of two ingredients, whose recurrence in different proportions gives rise to most controversial disability questions: The first ingredient is disability in the medical or physical sense, as evidenced by obvious loss of members or by medical testimony that the claimant simply cannot make the necessary muscular movements and exertions; the second ingredient is *de facto* inability to earn wages, as evidenced by proof that claimant has not in fact earned anything.
>
> The two ingredients usually occur together; *but each may be found without the other.* A claimant may be, in a medical sense, utterly shattered and ruined, but may by sheer determination and ingenuity contrive to make a living.  Conversely, a claimant may be able to work, in both the claimant's and the doctor's opinion, but awareness of the injury may lead

6

employers to refuse employment. These two illustrations will expose at once *the error that results from an uncompromising preoccupation with either the medical or the actual wage-loss aspect of disability.* An absolute insistence on medical disability in the abstract would produce a denial of compensation in the latter case, although the wage loss is as real and as directly traceable to the injury as in any other instance. At the other extreme, an insistence on wage loss as the test would deprive the claimant in the former illustration of an award, thus not only penalizing his or her laudable efforts to make the best of misfortune but also fostering the absurdity of pronouncing a person nondisabled in spite of the unanimous contrary evidence of medical experts and of common observation. *The proper balancing of the medical and wage-loss factors is, then, the essence of the "disability" problem in workers' compensation.*

Larson & Larson, § 80.02 (emphases added) (footnotes omitted).

Plainly, then, a thorough reading of the *Larson's* passage upon which the supreme court relied reveals that the treatise cautions against the path followed by the Panel — requiring a claimant to prove both medical incapacity and loss of wage earnings to establish "disability."

¶ 9    Moreover, a close reading of *Culver* reveals that the supreme court's description of disability was not dispositive of the issue raised in that case. In *Culver*, the issue was the calculation of

7

Social Security benefits offsets against workers' compensation disability payments. No party to *Culver* challenged the affected workers' disability status; rather, the issue raised was the propriety of and order in which offsets should be calculated. *See* 971 P.2d at 647-54. We therefore conclude that the quoted language from *Culver*, on which the Panel relied, was dictum and thus not binding on us here.

¶ 10 Instead, we look to previous cases that clearly and unambiguously defined "disability." As early as 1940, the supreme court expressed its view that "disability" "means industrial disability or loss of earning capacity and not mere functional disability." *Byouk v. Indus. Comm'n*, 106 Colo. 430, 434, 105 P.2d 1087, 1089 (1940). Two decades later, the supreme court repeated this definition. *Colo. Fuel & Iron Corp. v. Indus. Comm'n*, 151 Colo. 18, 24, 379 P.2d 153, 156 (1962). A division of this court again echoed this definition in 1980. *Matthews v. Indus. Comm'n*, 627 P.2d 1123, 1124 (Colo. App. 1980) ("'disability' means loss of earning capacity"). By the 1990s, the definition was slightly refined, but the same basic meaning remained. *See Baldwin Constr. Inc. v. Indus. Claim Appeals Office*, 937 P.2d 895, 897 (Colo. App. 1997) ("[A]n

impairment becomes a disability only when the medical condition limits the claimant's capacity to meet the demands of life's activities."); *Boice v. Indus. Claim Appeals Office*, 800 P.2d 1339, 1341 (Colo. App. 1990) ("[T]he term 'disability' means loss of earning capacity or an inability to work as effectively or as efficiently as claimant did prior to the injury."). Notably, *none* of these cases expressly defining "disability" has mandated that a claimant must establish *both* "medical incapacity" and "loss of wage earnings" to qualify for disability benefits. Further, the supreme court has not explicitly overturned any of these cases defining "disability."

¶ 11    We therefore conclude that although the concept of disability incorporates both "medical incapacity" and "loss of wage earnings," a claimant need not prove both components to establish entitlement to disability benefits under the Act.

¶ 12    Because we have concluded that the Panel's two-pronged test for "disability" too narrowly limits the scope of the term, we need not address claimant's contention that differences between section 8-42-103(1), C.R.S. 2017, on the one hand, and section 8-42-105(3), C.R.S. 2017, and § 8-42-106(2), C.R.S. 2017, on the

other hand, illustrate that the legislature did not intend "disability" to be read as narrowly as the Panel held. The latter two sections claimant points to address the *termination* of disability benefits, not their commencement, and therefore are inapposite here. Nor do we address claimant's reliance on the Panel's earlier decision in *Boddy v. Sprint Express Inc.*, W.C. No. 4-408-729, 2000 WL 1368970 (Colo. I.C.A.O. Aug. 15, 2000). Although we defer to the Panel's reasonable interpretations of the Act, *Dillard v. Indus. Claim Appeals Office*, 121 P.3d 301, 304 (Colo. App. 2005), *aff'd*, 134 P.3d 407 (Colo. 2006), we are not bound by earlier Panel decisions. *Leewaye v. Indus. Claim Appeals Office*, 178 P.3d 1254, 1258 (Colo. App. 2007).

### B. Claimant's Entitlement to TPD Benefits

¶ 13 Having determined that the Panel erred by requiring claimant to demonstrate both "medical incapacity" and "earning wage loss," we turn to the question whether the evidence supported claimant's TPD award.

¶ 14 "Whether a claimant's industrial disability has caused or contributed to his reduced earnings is a question of fact, and the ALJ's resolution of this issue, if supported by substantial evidence,

is conclusive on review." *City of Aurora v. Dortch,* 799 P.2d 461, 463 (Colo. App. 1990) (citation omitted).

¶ 15    Here, the ALJ found that claimant's documented commission decrease was attributable to her numerous medical and therapy appointments. Through her own testimony and submitted pay stubs, claimant showed that during the year she underwent treatment for her work-related injury she earned approximately $20,000 less than she had earned the previous year. She testified that she took no other significant time off work and was not absent for any length of time for any reason other than her medical and therapy appointments. Employer does not dispute this evidence. We conclude that this evidence amply supports the ALJ's finding that claimant's wage loss was attributable to her admitted work-related injury. *Id.*

### III.  Conclusion

¶ 16    Because substantial evidence supports the ALJ's factual findings, and the ALJ properly applied the law to this case, we hold that the Panel erred in setting aside the ALJ's decision.

¶ 17    We therefore set aside the Panel's decision and remand the case with instructions to reinstate the ALJ's order concluding that

claimant was entitled to receive TPD benefits from December 31, 2014, through September 2, 2015, and ordering employer to pay any outstanding TPD amounts accrued during this period.

JUDGE RICHMAN concurs.

JUDGE FURMAN dissents.

JUDGE FURMAN, dissenting.

¶ 18    I respectfully dissent from the majority because in my opinion the two-part definition of "disability" described in *Culver v. Ace Electric*, 971 P.2d 641 (Colo. 1999), is binding on this court.  Based on this binding law, I agree with the Industrial Claim Appeals Office (ICAO) panel that Montoya did not establish that she has a disability entitling her to temporary partial disability benefits.

¶ 19    Section 8-42-103(1), C.R.S. 2017, provides that a claimant be paid disability indemnity as wages "[i]f the injury or occupational disease causes disability."  The statute does not define "disability," but our supreme court described it this way:

> Workers' compensation benefits include elements of medical impairment compensation and wage loss protection.  *See Colorado AFL-CIO v. Donlon*, 914 P.2d 396, 404 (Colo. App. 1995).  The "disability concept is a blend of two ingredients, whose recurrence in different proportions" has received a great deal of legislative and judicial attention.  4 [Arthur Larson, *Larson's Workers' Compensation Law*], at § 57.11, 10-16 [(1994)].  The first ingredient is medical incapacity evidenced by a loss of a limb, muscular movement, or other bodily function.  The second ingredient is wage-earning incapacity evidenced by an employee's inability to resume his or her prior work.  *See* 4 Larson, *supra*, at § 57.11, 10-16.

13

*Culver*, 971 P.2d at 649.

¶ 20    Both the ICAO panel in its order and employer, Ethan Allen Retail, Inc., in its answer brief cited this definition as "well settled." In her opening brief, Montoya cited this two-part definition, and the *Boddy* case on which she relies also cited this definition. *Boddy v. Sprint Express Inc.*, W.C. No. 4-408-729, 2000 WL 1368970, at *1 (Colo. I.C.A.O. Aug. 15, 2000).

¶ 21    In this case, it was undisputed that Montoya was released by the attending physician to regular duty without restrictions just one day after her injury. The ALJ found that the *injury* did not impair Montoya's ability to perform the duties of her employment. And, there is nothing in the record to establish that Montoya had any sort of medical incapacity that prevented her from being able to do her job.

¶ 22    Accordingly, because I believe the ICAO panel's interpretation of law was correct and its findings are supported by the record, I would affirm the order.